### KIDD v. JOHNSON.

The owner of a trade-mark which is affixed to articles manufactured at his establishment may, in selling the latter, lawfully transfer therewith to the purchaser the right to use the trade-mark.

APPEAL from the Circuit Court of the United States for the District of Louisiana.

The facts are stated in the opinion of the court.

*Mr. M. F. Morris* for the appellant.

*Mr. E. M. Johnson, contra.*

MR. JUSTICE FIELD delivered the opinion of the court.

The question presented in this case relates to the ownership of a trade-mark used by the complainants on packages and barrels containing whiskey manufactured and sold by them in Cincinnati, and arises out of the following facts : —

In 1849, one S. N. Pike, doing business in that city as a wholesale dealer in whiskey, adopted as a trade-mark for his manufacture the words, " S. N. Pike's Magnolia Whiskey, Cincinnati, Ohio," enclosed in a circle, which he placed on packages and barrels containing the liquor. Between that date and 1863 he was in partnership with different persons doing

business there under the name of S. N. Pike & Co.   In 1863, having dissolved his connection with others, he took as partners two of his former clerks, Tilney and Kidd, continuing the original firm name, and soon afterwards opened a branch house in New York City.   The same trade-mark was used by the new firm as it had been by the preceding firm, without any change.   At this time, and subsequently until its sale in 1868, the real property in Cincinnati, upon which the business was conducted, and the distillery, with its fixtures and appurtenances, belonged to Pike individually.   In 1868, the firm removed its entire business to New York City, and Pike sold the real property in Cincinnati, and the stills, tubs, engines, boilers, tubing, and all apparatus in his distillery, for the consideration of $125,000, to the firm of Mills, Johnson, & Co., who were also engaged in the manufacture and sale of whiskey at that place. At the same time, Pike executed and delivered to the purchasers a separate instrument, stating that, having sold his premises to them, he extended to them and their successors the use of all his brands formerly used by him in his Cincinnati house.

Mills, Johnson, & Co. continued for some years the manufacture and sale of whiskey on the premises thus purchased, using, without objection from any one, the brands previously used by S. N. Pike & Co.   They were succeeded in business by the complainants, who, it is admitted, are entitled to all the rights which they possessed in the trade-mark in question. S. N. Pike died in 1872, and his surviving partners formed a new partnership, under the name of George W. Kidd & Co., which was subsequently dissolved, and to its business Kidd, the appellant in this case, succeeded.

The complainants finding that whiskey bearing this trademark, manufactured by the firm of Tyra, Hill, & Co., of St. Louis, was sold in large quantities by dealers in New Orleans, filed the present bill to enjoin the dealers from selling or trafficking in whiskey contained in packages thus marked.   By an amendment to the bill the defendant Kidd was made a party.   He filed an answer and cross-bill, asserting title to the trade-mark as surviving partner of the firm of S. N. Pike & Co., and setting forth that Tyra, Hill, & Co. were acting under a license from him.

The principal question for determination is whether the complainants, claiming under the sale of Pike to their predecessors, or the defendant Kidd, claiming as survivor of S. N. Pike & Co., have the exclusive right to the trade-mark mentioned. The court below decided that the complainants possessed the exclusive right, and our judgment approves of the decision.

It is admitted that Pike was the owner of the trade-mark when he took two of his clerks into partnership and formed the firm of S. N. Pike & Co. He did not place his interest in the trade-mark in the concern as a part of its capital stock. He allowed the use of it on packages containing the whiskey manufactured by them; but it no more became partnership property from that fact than did the realty itself, which he also owned, and on which their business was conducted. He was engaged in the same business before the partnership as afterwards, and taking his clerks into partnership changed in no respect, beyond its terms, their relation to his individual property. Their subsequent conduct, moreover, plainly shows that they claimed no interest in the trade-mark. They knew of his conveyance of its use to Mills, Johnson, & Co. on the 1st of October, 1868, when they removed their own business to New York, and made no objection to the transfer. Their subsequent correspondence discloses beyond question their knowledge of the transfer and recognition of his power to make it. That transfer was plainly designed to confer whatever right Pike possessed. It, in terms, extends the use of the trade-mark to Mills, Johnson, & Co. and their successors. Such use, to be of any value, must necessarily be exclusive. If others also could use it, the trade-mark would be of no service in distinguishing the whiskey of the manufacture in Cincinnati; and thus the company would lose all the benefit arising from the reputation the whiskey there manufactured had acquired in the market. The right to use the trade-mark is not limited to any place, city, or State, and, therefore, must be deemed to extend everywhere. Such is the uniform construction of licenses to use patented inventions. If the owner imposes no limitation of place or time, the right to use is deemed coextensive with the whole country, and perpetual.

The claim of Kidd to the trade-mark as survivor of the partners 'in the firm of S. N. Pike & Co. is without any merit. Pike, in his lifetime, repudiated any ownership in the trade-mark after his sale, and Kidd knew that fact, and never even pretended that the firm had any such right until after Pike's death.

As to the right of Pike to dispose of his trade-mark in connection with the establishment where the liquor was manufactured, we do not think there can be any reasonable doubt. It is true; the primary object of a trade-mark is to indicate by its meaning or association the origin of the article to which it is affixed. As distinct property, separate from the article cre ated by the original producer or manufacturer, it may not be the subject of sale. But when the trade-mark is affixed to articles manufactured at a particular establishment and acquires a special reputation in connection with the place of manufacture, and that establishment is transferred either by contract or operation of law to others, the right to the use of the trade-mark may be lawfully transferred with it. Its subsequent use by the person to whom the establishment is transferred is considered as only indicating that the goods to which it is affixed are manufactured at the same place and are of the same character as those to which the mark was attached by its original designer. Such is the purport of the language of Lord Cranworth in the case of *Leather Cloth Company* v. *American Leather Cloth Company*, reported in 11th Jur. N. s. See also *Ainsworth* v. *Walmesley*, 44 L. J. 355, and *Hall* v. *Barrows*, 10 Jur. N. s. 55.

The present case falls within this rule.

*Decrée affirmed.*