JOSEPH W. SYMONDS, and another in equity, WALTER G. DAVIS, and others, intervening complainants,

*vs.*

JOHN WINSLOW JONES.

Cumberland.    Opinion February 1, 1890.

*Trade-mark. Labels. Transfer. Use by vendee. Equity. Injunction. New parties. Practice.*

The owner of an established business, in which he uses certain peculiar labels and trade-marks, may make a valid conveyance of such labels and trade-marks, in connection with a conveyance of the plant and good-will.

If such labels and trade-marks consist largely of the name, initials of the name, or the residence of such owner, he may yet in the same manner divest himself of the right to use them, and vest the right in his vendees.

The purchasers of trade-marks and labels, however, should not use them without change if they indicate that the article to which they are applied, is made by the vendor. In such case words must be added showing that the vendor has retired, and that the goods are made by his successors.

New parties complainant may be admitted in an equity proceeding as their interests arise, if their admission does not increase the burden of the defense.

IN EQUITY.

This was an appeal from a decree of the presiding justice who heard the case, sitting in equity for Cumberland county, and who granted a decree against the defendant enjoining him from using certain labels and trade-marks, formerly employed by him in the

canning business, and which with his manufacturing establishments, good-will, etc., he had sold and conveyed. The bill praying for an injunction and account was filed July 1, 1887. After the bill was filed, Davis, Baxter and Davis, the purchasers of the labels, trade-marks and other property from the original complainants were allowed to intervene. They waived that part of the bill asking for an account.

The facts are stated in the opinion.

*W. L. Putnam*, for plaintiffs.

The answer is not sworn to, nor is it signed by the defendant himself. It is, therefore, a mere matter of pleading. Chancery rule 14.

The answer does not put in issue the value or validity of any of the trade-marks or the good-will. The only real issue raised by it is one of title, defendant setting up a right in himself. It is shown by the answer and proofs, that Jones in the most public manner during the three years before filing of the bill, set up a title and denied and impugned the plaintiffs' title, to the great injury of these trade-marks.

In the testimony and exhibits, the expression is not "Winslow corn" or "Winslow green corn," but "Winslow's corn" and "Winslow's green corn," indicating, by the possessive form, proprietorship, rather than quality or process.

The defendant having sold the trade-marks and labels for a valuable consideration, is estopped from questioning their validity. By setting up title, he admits their validity. No man can claim title to what does not exist; thus by claiming title he admits its existence, their validity being the very essence of their existence.

Plaintiffs should be protected in their right to the words "Globe" and "World Renowned" in the connection in which they use them. *Royal Baking Powder Co.* v. *Royal Chem. Co.*, N. Y. Superior Court, March 1873; *Same* v. *Mason*, U. S. C. C., So. District, Ills., Treat, J.; *Same* v. *Sherrill*, and *Same* v. *Jenkins*, N. Y. Sup. Court, 1880; *Same* v. *McQuade*, U. S. C. C., Northern Dist., Ills., Blodgett J.; *Same* v. *Vouwie*, U. S. C. C., Northern

Dist., Ohio, Walker, J.; *Same* v. *Davis*, U. S. C. C., Ea. Dist., Mich., Brown, J.; *McLean* v. *Fleming*, 96 U. S. pp. 245, 254.

As to defendant's claim that trade-marks, in part, indicate a process only, counsel cited : *Singer Machine Mfrs.* v. *Wilson*, 3 Appeal Cases, p. 376; *Same* v. *Larsen*, 8 Bissell, p. 151. The words, "Winslow's Green Corn," have never been permitted to go out to the world. The right to their use has been held in a single line of transmission. Its generic or public use has always been guarded against. They represent the peculiar quality, or excellence, which the owner of a trade-mark gives to his product. *Menendez* v. *Holt*, 128 U. S., 514, 520, 521.

Plaintiffs entitled to use defendant's name : *Hoxie* v. *Chaney*, 143 Mass. 592; *Kidd* v. *Johnson*, 100 U. S. 617.

Defendant cannot complain that the Winslow Packing Co. used the words, "Prepared by John Winslow Jones" because he does not set it up in his answer; they were used with his consent; he transferred the labels with those words on them; they were omitted more than two years before the bill was filed.

To the defendant's claim of forfeiture because he was not retained by the original corporation and paid as managing director, counsel argued : This was a matter of avoidance and defendant had failed to put in any evidence. Title of his vendees has been made absolute with his consent, assistance and affirmative action. No words of condition or forfeiture in the transfer of the factories, good-will and business. Inter-dependent clauses, each being executory and *pari materiâ*, not found here. The transfer was an executed and accomplished fact. There were conveyances from Jones of the good-will and trade-marks disconnected from any agreement to employ him as managing director.

Jurisdiction to restrain defendant's notices, advertisements and circulars : High on Injunc. §§ 1011, 1012, 1181; *Boston Diatite Co.* v. *Florence Co.*, 114 Mass. 69; Story's Eq. §§ 944–951, 953; *Mogford* v. *Courtenay*, 45 L. T. R., S. C. Chitty's Eq., Index, 4th Ed. Vol. 3, p. 2770; *Harper* v. *Pearson*, 3 L. T. R. (N. S.) 547; *Stevens* v. *Paine*, 18 Id. 600, S. C. Chitty's Eq. Dig., Vol. 7, "Trade;" *Massam* v. *Thorley's Cattle Food Co.*, 14 Chan. Div. 748.

Exceptions to admitting intervenors: Counsel cited, *Mason* v. *York & C. R. R. Co.*, 52 Maine, 107; *Carroll* v. *Same*, Id. and cases there cited; Story's Eq. Pl. § 343. Plaintiffs here assert only a title which is disputed and ask the prevention of future wrongs and not damages for past infringements.

*B. F. Hamilton and G. F. Haley*, for defendant.

The Limited Co. agreed to employ Jones at a salary of $5,000 per year, for ten years; having neglected and refused they cannot in equity compel the execution upon his part of the agreement, when they refuse to perform theirs. Real question at issue is the plaintiffs' right to the exclusive use of the Globe labels. "World Renowned" are not words capable of exclusive appropriation by any one, not being used to denote the origin, or manufacture of, but being descriptive of quality. *Amoskeag Co.* v. *Trainer*, 101 U. S. 51; *Canal Co.* v. *Clark*, 13 Wall, 311, and cases cited; *Gilman* v. *Hunnewell*, 122 Mass. 139; *Caswell* v. *Davis*, 58 N. Y. 223; *Burke* v. *Cassin*, 45 Cal. 467; *Choynski* v. *Cohen*, 39 Cal. 501; *Larabee v. Lewis*, 67 Ga. 562. "Winslow's Green Corn," was used by plaintiffs and defendant to inform the public that the corn was prepared by the Winslow process to distinguish it from the Retort process, and decided by U. S. C. C. not to be patentable (2 Hughes, 527); consequently the world had the right to use the process and so mark their goods. Plaintiffs by their own fraud and misrepresentation have deceived and misled the public, and forfeited their right to the trade-mark.

Admission of intervenors: When the trustees transferred the property discharged from the trust, the object of the bill was accomplished. Court will not determine their future rights. Purchasers of patents and trade-marks, pending suit, not protected as in other cases. *Moore* v. *Marsh*, 7 Wall. 515; *Dean* v. *Mason*, 20 How. 198; *Cross* v. *De Valle*, 1 Wall. 5. Damages would not go to intervenors. *Bardwell* v. *Ames*, 22 Pick. 333.

Trade-marks assuring the public of the origin or ownership of the article: Upton on Trade-Marks, 98; *Manhattan Medicine Co.* v. *Wood*, 108 U. S. 218, and cases cited and approved; *Connell* v. *Reed*, 128 Mass. 477; *Parlett* v. *Guggenheimer*, 8 Cent. Rep.

796 (Md.); *Seigert* v. *Abbott,* 17 Id. 496; *Buckland* v. *Rice,* Id. 411; *Stachelberg* v. *Ponce,* 23 Fed. Rep. 430; *Sherwood* v. *Andrews,* 5 Am. Law Reg. (N. S.) 588.

Fraud and deception of plaintiffs, relied on by defendants, not set up in the answer in *Stachelberg* v. *Ponce, supra;* but the court considered it sufficient. Court utterly refuses its aid where fraud and deception are used. The inquiry is not only whether defendant, from his own showing and proof, has acted unjustly and inequitably, but also whether complainants, by their allegations and proof have shown that they are entitled to relief. *Knox* v. *Smith,* 4 How. 298.

*Arthur Steuart,* of the Maryland bar, for defendant.

Generic names cannot be appropriated as trade-marks. *Lea* v. *Deakin,* Price & Steuart's Am. Trade-Mark Cases, 23; *Lechlanche Battery Co.* v. *Western Electric Co.,* Id. 157, and cases cited; *Goodyear's India Rubber Glove Mfg. Co.* v. *Goodyear Rubber Co.,* 128 U. S. 598. The words "Winslow's Green Corn," being clearly generic are public property.

A name alone is not a trade-mark when it is applied to designate, not the article of a particular maker or seller, but the kind or description of thing which is being sold. *Canal Co.* v. *Clark,* 13 Wall. 311; *Thompson* v. *Winchester,* 19 Pick. 214; *Wolff* v. *Boulard,* 18 How. Pr. 64; *Sherwood* v. *Andrews,* 5 Am. L. Reg. (N. S.) 588, 591; *Candee* v. *Deere,* 54 Ills. 439; *Singer Mfg. Co.* v. *Wilson,* L. R. 2 C. D. 484; *Cocks* v. *Chandler,* L. R. 11 Eq. 446; *Ford* v. *Foster,* L. R. 7 Chan. Ap. 611; *Burt* v. *Cassin,* 45 Cal. 467; *Burnett* v. *Phalon,* 21 How. Pr. 100; *Binninger* v. *Wattles,* 28 How. Pr. 206; *Singleton* v. *Bolton,* 3 Doug. 393; *Canham* v. *Jones,* 2 Ve. & B. 218; *Goodyear's India Rubber Glove Mfg. Co.* v. *Goodyear Rubber Co.,* 128 U. S. 598.

Trade-marks employed upon patented articles become public property with the expiration of the patents. The court will take judicial notice that the process was patented in 1862, under the law of 1836, and hence the patents, granted for fourteen years, have expired. Patents are public records. All persons are bound to take notice of their contents. *Boyden* v. *Burke,* 14 How. 576. Expired patents: *Singer Mfg. Co.* v. *Larsen,* U. S.

C. C., N. Dist., (Ills.), P. & S. Am. Trade-Mark Cases, 13, and cases cited in the opinion.

EMERY, J. This is an equity appeal. The material facts found by the court are these :

John Winslow Jones, the respondent, for several years prior to 1880 had been carrying on extensively the business of preserving or "canning" meat, fish and vegetables at various factories in Maine, New Brunswick and Prince Edward Island, and had built up a large trade in the canned products in the United States and Canada. The particular process of canning was known as the "Winslow Process," having been originated by one Isaac Winslow. The business above stated was started by Nathan Winslow & Co., and was succeeded to by the defendant who greatly extended it. Among the labels used by him to designate the products were two in particular. One was known as the "red" label, being of a red color, and bearing the figure of an ear of corn, the words "Winslow's Green Corn," and "John Winslow Jones, Portland, Maine," and also the figure of a globe, with the words "World Renowned," and "Trade-mark" thereon. The other was known as the "yellow" label, being of a yellow color, and bearing the figure of a globe, with the letters "J. W. J.," thereon and the words, "Globe Trade-mark Brand," "Winslow's Green Corn," "World Renowned," etc. While these particular labels were used on canned corn, the figure of the globe and the various words and phrases on these labels were used on labels for other products, and on the letter-heads and circulars used in the business.

In the latter part of 1879 Jones procured the organization in England, of the "J. Winslow Jones and Company, Limited," for the purchasing, carrying on, and further extending the same business ; and in pursuance of an agreement, he conveyed to the new company March 1, 1880, all his said factories, machinery and plant generally, and also, as admitted by Jones in his answer, all the labels, trade-marks and good-will of the business. Jones further admits that such conveyance included the "red" label and the "yellow" label above described.

It was stipulated in the agreement referred to, that Jones

should be employed by the Limited Company as its managing director in America for ten years at a fixed salary, and should not for the same time carry on a similar business within fifty miles of any factory of the company, nor send any similar canned goods to any part of Europe.

To secure certain debentures, the Limited Company made to trustees, Bacon and Herring, a conveyance of all the property received from Jones, including the business, good-will, labels and trade-marks. The Limited Company, subject of course to this trust deed, took possession of all the property and plant conveyed, and carried on the same business with Jones as managing director in America, until 1882,—and during that time made use of the same labels and trade-marks to designate their products. In 1882 the Limited Company becoming financially embarrassed, transferred all the property, plant and business, including labels and good-will, to Charles P. Mattocks, subject of course to the trust deed to secure debentures. It was agreed by the company, the trustees and Mattocks, that the last named should take charge of the property and carry on the business, which he did, using the same labels and trade-marks to designate the products of the factories so managed by him. This arrangement for Mattocks to take charge of the business was assented to by the debenture holders, including Jones, who was a large holder. In 1883 Mattocks leased the property, plant and good-will to the Winslow Packing Company, and gave it written licenses to use, during the lease, the labels and trade-marks, which had been used in the business. Mattocks was president and manager of this new company. The company used to some extent these "red" and "yellow" labels, among others, as they had been before used, until 1885, when they had printed across the face of the labels the words, "Winslow Packing Company, successor to."

December 8, 1886, the original trustees under the deeds to secure the debentures transferred the trust, and conveyed all the properties, including good-will and labels, etc., to J. W. Symonds and Edward Moore, the complainants, who thereafterwards held the properties, etc., under the same trust.

After the assignment of the "J. Winslow Jones Company, Lim-

ited," in 1882, Jones was no longer employed as managing director, and subsequently as early as 1884, he at various places in the United States and within the limits of the trade or custom of the former business, but not within fifty miles of any of its factories, engaged in the same kind of business. In this new business to designate his new products, he made use of some labels, similar in color and style to the old "red" and "yellow" labels of the former business. The figure of an ear of corn, the figure of a globe, the words "John Winslow Jones, Portland, Maine," "Successor to Nathan Winslow & Co.," "Winslow's Green Corn," "World Renowned," "Trade-mark," "Globe Brand," and the initials "J. W. J.," were used on these new labels. There were some minor differences between the old and new labels, but they were practically similar. Jones also used in his new business practically the same style of letter-heads that he had used in the old business and which had been used by his assignees, the Limited Company and its successors. The letter-heads had on them the words, "Winslow's World Renowned Green Corn" and the figure of a globe with the words "Trade-mark." Jones also issued circulars, claiming the right to the sole use of the globe trade-mark and the old labels, and denying any right in the assignees of the Limited Company.

This conduct of Mr. Jones, as to labels, letter-heads, etc., disturbed the trade and lessened the sale of the product of the old factories, and injured the business of those claiming under his assignees the Limited Company. Whereupon, Messrs. Symonds & Moore as trustees for the debenture holders, and joining Mattocks and the Winslow Packing Company as parties, filed this bill in equity against Jones praying for an injunction to restrain Jones from engaging in a similar business within fifty miles of any of their factories, from selling canned goods in Europe, and from using letter-heads, or labels similar to or in colorable imitation of those used by him in the old business and by him sold to the Limited Company. The bill also prayed for an account. The court held by a single justice with the equity powers of a chancellor, sustained the bill, and granted a perpetual injunction as prayed for, but made no order for accounting. The respondent

thereupon appealed to the law court sitting as an appellate equity court.

All controversies over the facts are settled by our finding of facts, as above stated, and it only remains to consider the legal and equitable principles by which, upon the facts found, the case is to be determined.

Every business man feels a natural and honorable pride in the articles produced by him, and in the business he builds up. He naturally gives some particular name to the product of his invention, of his factories, farms, mines or vineyards, to distinguish them from similar products of others; and uses peculiar labels and marks upon his products, to identify them as his own. The public come to associate these names, labels, and marks with the products of some particular origin or ownership, or of some particular factory, farm, etc. It is clear that such names, etc., thus become convenient for the consumer, and valuable to the producer, and that both the consumer and the producer should be protected against their use by other parties upon other similar products. They become valuable according to the familiarity of the public with them, and the excellence of the product designated by them. The law justly recognizes such names, labels and marks as important attributes or appurtenances of a business, and as proper to be transferred with any sale or transfer of the business and its plant.

Words, descriptive of the article, or indicative of the general locality of its production, cannot of course be appropriated by one producer to his exclusive use. Every producer of the same kind of articles can use upon his products any words descriptive of the quality of the articles, or indicative of the county or town where produced, however long time the same words may have been used by others. A man may always describe his products, and tell where they were produced. The same may be said of any color upon a label, for every label must have some color, and the number of colors is limited. Such words and marks, however, as by their own meaning, or by association in the public mind, indicate not the quality of an article, but its origin or ownership, —the person by whom, or the factory in which it was produced,—

become appropriated in their use exclusively to the originator or owner of such articles. No other person can lawfully use them to designate other similar articles of different origin or ownership. *McLean* v. *Fleming*, 96 U. S. 245 ; *Canal Co.* v. *Clark*, 13 Wall. 311 ; *Goodyear Rubber Co. Case*, 128 U. S. 598 ; *Manufacturing Co.* v. *Trainer*, 101 U. S. 51 ; *Godillot* v. *Harris*, 81 N. Y. 263.

The respondent urges that most, if not all, the words and symbols on the "red" and "yellow" labels in question are such as cannot, under the principles above stated, be exclusively appropriated by the complainants as against him. He claims that such of the words and symbols as are generic, or descriptive, or do not indicate the origin, or that the ownership is in the complainants, are free to all and that he cannot be restrained from using them. In this class he places, "World Renowned," "Trade-Mark," "Only Reliable Brand," etc. The complainants practically concede that such words could not be exclusively appropriated by one producer.

The respondent further claims that the words, "Winslow's Green Corn," do not, under the facts, indicate the origin or ownership of the products, but simply that they are prepared by a process originated by Isaac Winslow, and known to the trade as the "Winslow Process,"—that this process was never effectually patented, and was not patentable, and hence any one could use it, and could use any apt words to indicate that his product was by that process. He argues that "Winslow's Green Corn" are apt words for that purpose, and that they indicate the process only. The complainants concede that the process originated with Isaac Winslow and was never effectually patented, but they insist that the words "Winslow's Green Corn," under the facts, do in themselves and by association indicate that the articles upon which they are placed, are produced from the plant of Winslow or his successors in the business. Many authorities are cited by counsel on each side of this controversy.

The respondent further urges, that the words "John Winslow Jones" constitute his name, and that the letters "J. W. J.," are the initials of his name, and were intended to represent his name and initials ; and that no one else can acquire the right to use

them or to prevent his using them.   The complainants insist that the respondent should not use the words "John Winslow Jones, Portland, Maine," since he no longer carries on this business in Portland, Maine, and they do carry it on there,—that the use by the respondent of these words combined, injures their business, in that it tends to mislead the public into believing that the respondent's goods are the product of the old, well-known factories. The complainants further reply that, whatever other use the respondent may make of the letters "J. W. J.," for him to use them on the figure of a globe, has the same injurious effect.

The complainants, however, do not rest their case on the ground that they have appropriated and used these words and symbols on the "red" and "yellow" labels, and that such words and symbols are capable of exclusive appropriation.   They place their case on the ground that, whatever the character of these words and symbols, they were devised and used by the respondent as the labels and trade-marks of his business, and as such were sold by him for a valuable consideration to the purchasers of his plant and business.   The complainants, representing these purchasers, urge, and the facts show, that the respondent,—by selling the good-will of the business, and the labels and marks used by him to designate the products of the business,—promised, for a consideration, not to use such labels or marks for himself, and, for the same consideration, promised that the purchasers should have the exclusive use, so far as he was concerned.   It is argued that whatever may be the rights of the complainants against third parties unaffected by any contract, they have acquired by valid contract from this respondent, the right to the exclusive use, as against him, of these labels and the words and symbols upon them ; and that his use of them, or of any colorable imitation of them, is a violation of his contract, which an equity court can and should prevent.

What is known as the "good-will" of the business is recognized by the law as a proper subject of sale or contract, in connection with a transfer of a business plant.   An established business, with plants and products well known to the trade, has a money value often far above that of its mere plant, and this is often the

controlling motive for the purchase. Labels, trade-marks, particular words and phrases devised or used to distinguish or identify the products of the plant, and associated with such products in the public mind, are in like manner usually transferred with the plant, and are regarded as valuable acquisitions for the purchasers. They are, equally with the good-will, proper subjects of such sale and contract. The name or initials of the originator or owner of the business, when used on labels and as trade-marks in the business, may thereby have a value and so may be included in a sale of the business, so far at least as to prevent the vendor afterward using them in like manner on other similar products to the detriment of his vendee.

These propositions are supported and illustrated by authorities. In *Kidd* v. *Johnson*, 100 U. S. 617, S. N. Pike adopted as a trade-mark for his whiskey the words, "S. N. Pike's Magnolia Whiskey, Cincinnati, Ohio," enclosed in a circle. He took several partners into the business, but retained his individual ownership of the plant, and the trade-mark. The firm, Pike being a member, removed the business to New York, and Pike sold the Cincinnati plant and trade-marks to Mills, Johnson & Co., who entered upon the business with that plant, and used the same label and trade-mark before used by S. N. Pike, and the various firms with which he was associated. Pike dying, his surviving partners undertook to use the trade-mark above described. The court held that the purchasers from S. N. Pike had the exclusive right to use the trade-mark, and enjoined the defendant's use. In *Burton* v. *Stratton*, 12 Fed. Rep. 696, (U. S. D. C. E. D. Mich.) two brothers, Stratton, originated a yeast, and adopted as a trade-mark the figures of two heads (portraits of one of them with a twin brother) in an oval setting, with the words, "Twin Brothers Improved Dry Hop Yeast." The brothers, the proprietors, sold the business and the trade-mark to Burton, who carried on the same business and used the same trade-marks. Subsequently one of the Strattons began making yeast, and used the words or name, "Twin Brothers Dry Hop Yeast." The use of this trade-mark by Stratton was enjoined. Brown, Dist. J., said that the cases were numerous in which it had been held that a party may law-

fully sell not only a trade-mark indicative of origin in himself, but even the right to use his own name, in connection with a particular business. In *Pepper* v. *Labrot*, 8 Fed. Rep. 29, (U. S. C. C., Dist. of Ky.) the right to use the words "Old Oscar Pepper" was held to pass by an assignment of the plant and business, even as against Pepper himself, the former proprietor who had set up a separate establishment in another county. In *Skinner* v. *Oakes*, 10 Mo. App. 45, Oakes had originated a business of making and selling a candy called "Oakes Candy." He took a partner, Probasco, and the firm carried on the same business. He afterward sold to Probasco all his interest in the property, business and trade-marks. Probasco's title passed to Skinner. It was held that Oakes should be restrained from using the name "Oakes Candy" in a new candy business set up by him. In *Hoxie* v. *Chaney*, 143 Mass. 592, A. N. Hoxie had originated and carried on a business of making and selling soaps, and used for label and trade-mark the phrases, "A. N. Hoxie's Mineral Soap," and "A. N. Hoxie's Pumice Soap." He took Pegram into partnership, and afterward sold to him all the plant, business and good-will. Pegram then formed a partnership with Chancey. It was held that Hoxie, having sold and been paid for, the names and marks applied to the soap, could not use them in a new soap business. In *Churton* v. *Douglas*, Johns. Eng. Ch. 174, the complainant and respondent had carried on a manufacturing business under the firm name of "John Douglas & Co." Douglas sold to Churton all his interests in the plant, business and good-will, and afterward formed a new partnership with another person in the same kind of business, under the same firm name "John Douglas & Co." The new firm was restrained from using that name.

But the respondent contends that this case is not within the above principles, even if they are correctly stated. He contends that any transfer of good-will, labels, and trade-marks by him to the Limited Company, was conditional upon his being employed for ten years as managing director of that company in America; and that his discharge at the end of two years, worked a forfeiture of the right to the exclusive use of the labels and trade-marks.

No such condition of forfeiture was expressed in words in the instrument of conveyance, nor in the preliminary agreement of sale, and forfeitures are not favored in the judicial interpretation of writings. We think the agreement for hiring was an independent agreement so far as the conveyance and transfer of the property, good-will and trade-mark were concerned. As well, we think, might Jones claim a forfeiture of all the property conveyed as of this part of it. We do not think it was intended that the property, or the business or its good-will should revert to Jones, if for any reason he should be discharged from the employ of the Limited Company before the expiration of the ten years.

The respondent again contends, and stoutly, that the complainants should not have the protection of the law and of this court for these labels, for the reason that they, or the persons managing the property and the business, since he left the employ of the Limited Company, have so used the labels and marks as to mislead the public into believing that the goods were manufactured or prepared by him. The facts do show that the Limited Company, and after it, Mattocks, and the Winslow Packing Company, used the "red" or "yellow" labels more or less without change up to 1885, when the latter company printed across the face of such of these labels as it did use, the words "Winslow Packing Co., successor to." Such use of the labels, without words indicating that Jones had personally left the business, and indicating a change of ownership would evidently mislead the public as to the manufacturer of the goods, and hence should not receive protection from the court. It would wrong Jones, as well as the public. *Stachelberg* v. *Ponce*, 23 Fed. Rep. 430, S. C., 128 U. S. 686; *Manhattan Medicine Co.* v. *Wood*, 108 U. S. 218. It is plain, that while thus using the labels, the parties complainant in interest, could not maintain a bill for an injunction against their use by the respondent.

The facts further show, however, that before the filing of the bill, the proprietors of the labels refrained from using them, or made such additions to those they did use, as clearly to indicate that the ownership of the business had changed, and that the

successors to Jones, instead of Jones himself, were producing the goods. At the time of filing of this bill, none of the complainants were offending in this respect, but all seem to have been dealing fairly with the public. Of course they cannot have any damages, or accounting for things done by the respondent while they were themselves offending, but if they are now themselves doing equity, they may ask the court to require the respondent to do equity also. In *Manhattan Co.* v. *Wood, supra,* the decision adverse to the complainant was put on the ground that the misrepresentation had been and was being continued. We find no authority deciding that a prior improper and misleading use of labels, afterward corrected and made right, should bar a bill in equity brought for the protection of the corrected label. In this case, we think the improper use was inadvertent; and now that such use has been corrected for several years, it seems to us inequitable that Jones should continue to make use of the labels and trade-marks (or colorable imitations of them) which he sold for a satisfactory consideration to the complainants' predecessors.

In coming to this conclusion upon this question, however, we bear in mind, that the improper use complained of was not by the complainant trustees, nor their predecessors in the trust, nor by the debenture holders, but by Mattocks and the Winslow Packing Co., who were practically mortgagors in possession, while the trustees and debenture holders were mortgagees out of possession. These innocent debenture holders have taken possession since the filing of this bill, as will hereafter be stated, and are now asking for protection. Perhaps, had the original complainants or those now prosecuting been guilty of the misconduct, the result might have been different. We do not say.

The respondent also raises a question of equity pleading, which we have maturely considered. Pending this suit the debenture holders have caused all the property held by the original complainants as trustees including the labels, trade-marks, etc., to be sold by the trustees to enforce the trusts and realize on the assets. At such sale duly held, Messrs. Davis, Baxter and Davis were the purchasers, and the trustees conveyed to them all the property and rights held by them under the various trust deeds. These purchasers thereupon applied to the court for leave to come in as

parties complainant, and further prosecute the suit. Leave was granted, and they were admitted as intervening complainants, to which order the respondent excepted. We do not see any objection to the admission of these new parties. Equity procedure is sufficiently elastic to admit new parties as their interests accrue. The purpose of their admission in this case is not to obtain a declaration of future rights, as argued by the respondent but to obtain a declaration of present rights, and the prevention of, future wrongs. The respondent is not prejudiced. The burden of the defense is not increased. The issues are not changed. The subject matter remains the same, and the judgment must be the same,—it being apparent that no accounting can be had in either case.

Our conclusion is, that the intervening complainants are properly made parties, and that equity requires in their behalf that the respondent should be perpetually restrained by injunction as set forth in the decree appealed from.

We think, however, it is the duty of the complainants to the respondent, as well as to the public, to refrain from using the labels in such manner and form, as might lead the public to suppose that the goods packed by them were packed by the respondent. They should strike from their letter-heads, circulars and labels any words indicating that the goods were prepared by John Winslow Jones, and, if they use his name, should add such words as clearly indicate that the goods are not prepared by him, but by them as his successors. This duty should be declared and made imperative in the decree, or in the supplemental decree, modifying the former decree. As the respondent was compelled to appeal to obtain this modification of the decree, so as to prevent the improper, misleading use of his name,—a modification we think he is entitled to,—we think he should recover the costs since the appeal, to be set off against the complainants' costs to the time of the appeal.

*Decree affirmed and case remanded for additional*
*decree in accordance with this opinion.*

PETERS, C. J., WALTON, VIRGIN, FOSTER and HASKELL, JJ., concurred.