Case 72—PETITION EQUITY—October 27, 1894.

## The J. G. Mattingly Co. v. Mattingly, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

TRADE-MARKS—Good Will of Firm.—Where a firm which owned and operated a distillery upon the product of which they had for many years used the firm name as a trade-mark, sold and transferred the distillery and also the "good will of the firm name" and "all trade-marks, brands and labels" belonging to the firm, the members of the firm had no right thereafter to similate any of the brands or trade-marks thus transferred, or to resort to any other fraudulent device to cause the public to associate with the distillery sold, goods manufactured at a different place, or to receive letters addressed to the firm name, or to fill orders manifestly referring to whisky manufactured according to the established and long used formula at the distillery in question; and in this action brought by the purchaser of the distillery for that purpose the Chancellor properly enjoined them from doing any of these things. The mere fact that plaintiff company had, prior to the commencement of the action, been in the habit of placing upon the revenue head of each barrel of whisky manufactured at the distillery purchased from defendants, a brand representing the old firm as "distillers," even if it was a fraud upon the public, does not deprive plaintiff of the right to the relief sought.

HUMPHREY & DAVIE AND STROTHER & GORDON FOR APPELLANT.

1. Where whisky made at a certain distillery is branded with the name of the proprietor as the trade-mark, the right to use the brand may be

The J. G. Mattingly Co. v. Mattingly, &c.

lawfully sold along with the establishment; and the use of the brand by the purchaser is not a fraud on the public, but will be taken to mean only that the whisky so branded continues to be the product of the same distillery. (Dant v. Head, 90 Ky., 255; Mattingly v. Stone, 12 Ky. Law Rep., 72; Johnson v. Kidd, 100 U. S., 620; Frazier v. Frazier, 120 Ill., 147; Dixon Crucible Company v. Guggenheim, 2 Brewster (Pa.), 32; Pratt's Appeal, 117 Pa. St., 401.)

2. There is no difference in principle between selling the right to use a man's own name as a trade-mark, and selling the right to use a fancy word or name which he has adopted and has been using in lieu of his own name as a trade-mark, and which has been by the public equally as much associated with its manufacture as his own name would have been. (Lepage v. Russia Campany, 51 Fed. Rep., 941; Russia Company v. Lepage, 147 Mass., 206;, Oaks v. Tonsmere, 49 Fed. Rep., 447; Holmes v. Holmes, 9 American Reports, 331; Dale v. Smithson, 12 Abbott's Practice Reports, 237; Olin v. Bate, 38 Am. Rep., 78; Encyclopædia of Law, vol. 16, p. 118.)

3. One may lawfully, by contract and for value received, in selling his business to another, include as an incident to the good will the right to continue to use his name as the designation of the business. (Brown Chemical Company v. Myers, 139 U. S, 540; Fraizer v. Fraizer, 120 Ill., 147.)

4. The defendant having sold the brand of J. G. Mattingly & Sons, and their several other brands, to the old corporation of J. G. Mattingly & Sons, and that corporation having sold the brands and the exclusive right to use them to the new corporation of J. G. Mattingly Company, an injunction should go to prevent the defendants from now forming a new firm or corporation under the name of J. G. Mattingly & Sons, even though they themselves are named Mattingly. (Probasco v. Buyone, 1 Missouri Appeals, 241; Gillis v. Hall, 3 Brewster, 509; Symonds v. Jones, 82 Maine; 17 American State Reports, 485; Hoxie v. Cheney, 58 Am. Rep., 149.)

5. The plaintiffs, by continuing to use the precise brands they had bought, to wit: "J. G. Mattingly & Sons, Distillers," etc, had not deceived the public, and had not come into court with unclean hands. It was lawful for them to continue the use of the original brands without change, and without adding the words "successor to," or other explanation. (Fulton v. Sellers, 4 Brewster (Pa), 72; Eggleston v. Vick, 11 Hare, 18; Jennings v. Johnston, 37 Fed. Rep, 364; Leather Cloth Case, 11 House of Lords Cases, 523; Coddington's Digest of Trademarks, sec. 559; Hoxie v. Cheney, 58 Am. Rep., 149; Solis v. Pose,. 16 Colorado, 388)

6. Even if it had been wrong for the plaintiff to continue to use the brands, "J. G. Mattingly & Sons, Distillers," after the r purchase of the right to do so, they discontinued using those words, and put their

The J. G. Mattingly Co. v. Mattingly, &c.

own name, "J. G. Mattingly Company, Distillers," upon the goods before this case was ready for trial. Under such circumstances, the doctrine of refusing the plaintiff relief because he has himself been doing wrong, should not be applied. (Symonds v. Jones, 17 Am. State Reports, 494; Pomeroy's Equity Jurisprudence, sec. 399; 8th Daly (N. Y.), 22.)

MATT O'DOHERTY AND THOMAS F. HARGIS FOR APPELLEES.

1. The facts of the case show that the telegram received and opened by the appellees was not addressed to the appellant, and, therefore, an injunction will not lie in respect to it. The injunction as it was granted should not be sustained, for it practically deprives appellees of the privilege of receiving mail matter in their own names as individuals or as a firm.

2. Appellant can not come into this court seeking equity since it has been guilty of fraud in stamping upon its whisky barrels the brand, "J. G. Mattingly & Sons, Distillers," thereby holding out to the public that J. G. Mattingly & Sons were the distillers of the whisky made by it, when in fact they were not the distillers. (Manhattan Medicine Co. v. Wood, 108 U. S., 227; Seabury v. Grosvenor, 14 Blachford, 262; Hobbs v. Francais, 19 Howard, 567; Connell v. Reed, 128 Mass. 477; Palmer v. Harris, 60 Pa St.. 156; Laird v. Wilder, 9 Bush, 136; McNair v. Cleaver, 10 Phil., 155; Patridge v. Menck, 1 How. Ap. Cases, 558; Pidding v. How, 8 Sim., 475; Perry v. Trueffel, 6 Beav., 66; Fetridge v. Wells, 4 Ab. Pr. Rep., 144; Skinner v. Oakes, 10 Mo. App., 45; Sherwood v. Anderson, 5. Am. Law Rep., 588; Hageman v. Hageman, 8 Daly, 1; People v. Mullins, 10 N. Y., Sup., 130; Avery v. Meikel, 81 Ky., 81; Solis Cigar Co. v. Pazo, &c., 26 Pac. Rep, 556; Koehler v. Sanders, &c., 122 N. Y., 65; High on Injunctions, sec. 680; Palmer v. Harris, 60 Pa. St., 160; Brown on Trade-Marks, secs. 28, 42 and 43; Kendall v. Russell,.5 Dana, 503; Gallatin v. Bradford, 1 Bibb, 209; Gen. Stat., chap. 29, art. 22, sec. 4; Pepper v. Labrot & Graham, Am. Trade-Mark Cases, 517; 13 Bush, 495.)

3. The appellees did not, by the transfer of the "good will belonging to said firm," deprive themselves of the future right to carry on business in their own names, their own way and with whomsoever they chose to trade. There is nothing in the deed of conveyance to authorize the conclusion that they have deprived themselves of such right. (Cottrell v. Babcock Printing Press Co., 54 Conn., 122; Skinner v. Oakes, 10 Mo. App., 4; Marshall v. Pinkham, 52 Wis., 572–3; England, Assignee v. N. Y. Pub. Co., 8 Daley, 375; Pepper v. Labrot, &c., 8 Fed. Rep., 29; McNair v. Cleaver, 10 Phil., 155; Leather Co. v. Am. Leather Co., 4 De Gex; Rogers & Bro. v. C. Rogers & Bro., 1 New Eng. Rep., 411., Pearson v. Pearson, 27 L. R., 145; Hanna v. Andrews, 50 Iowa, 462; Barret v. Percival, 5 Allen, 345; White v.

Jones, 1 Ab. Pr. Rep., 377; Crutwell v. Lye, 17 Ves., 344; Am. and Eng. Enc. of Law, vol, 8, p. 1369; Bishop on Contracts, secs. 520, 513, 514, 515.)

4. By the purchase of the good will, brands and trade-marks, the appellant acquired no right or interest in the names of "The Falls City Distilling Co.," "The Dougherty Distilling Co.," or B. D. Mattingly; and the manufacture by appellees of whisky under the name of B. D. Mattingly & Co., is not an infringement of the brands purchased by appellant.

5. If appellees had bound themselves not to use their own names or the name of either in branding whisky, or in issuing warehouse receipts, it would not aid appellant's position in the least, for such an agreement would be against public policy as restraining trade, and, therefore, void. (U. S. Statutes, 3295, 3247; Anderson v. Jett, 11 Ky, Law Rep., 572.)

6. The appellant having abandoned the use of the alleged brand, "J. G. Mattingly & Sons, Distillers," and having avowed of record that it will no more use the same in branding its product, has no longer, on its own showing, any right or interest therein to be protected, and appellees have the undoubted right to resume its use.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

In 1879, J. G. Mattingly, having become sole owner of a distillery in the western part of Louisville, erected by him and his brother in 1874 for manufacturing whisky, entered into partnership with four sons. In 1883 all his sons but B. D. Mattingly retired, though the business was continued under the original firm name of J. G. Mattingly & Sons until July, 1888, when the partnership property and business were transferred to a corporation organized and styled "J. G. Mattingly & Sons."

Consideration of that transfer, as expressed in the deed then executed, was stock at face value of one hundred and forty dollars, and bonds for sixty thousand dollars, secured by lien. The property conveyed was a tract of land whereon the distillery was situated; "also all the tools, machinery, implements,

whiskies and stock in trade, all accounts, notes and
other evidences of indebtedness and *good will belong-
ing to said firm*, parties of the first part, to have and
to hold said property described and set forth, to the
party of the second part, its successors and assigns
forever, with covenant of general warranty."

On the same day was executed by J. G. & B. D.
Mattingly, members of the firm of J. G. Mattingly &
Sons, to J. G. Mattingly & Sons, corporation, the fol-
lowing: "For the consideration of six hundred shares
of capital stock of the party of the second part, of
the par face value of one hundred dollars per share,
this day issued and delivered to the parties of the first
part by the party of the second part,  *  the parties of
the first part have bargained and sold, and do hereby
bargain, sell, transfer and convey to said party of the
second part, its successors and assigns, all trade-marks,
brands and labels belonging to the parties of the first
part, including the brand 'J. G. Mattingly & Sons,'
long used by the parties of the first part in branding
their whisky, to have and hold to said party of the
second part, its successors and assigns forever."

The corporation, the capital stock of which was
owned by J. G. & B. D. Mattingly, continued in
business to September, 1889, and then suspended, and
at same time the firm J. G. Mattingly & Sons made
assignment to Attilla Cox, trustee, for benefit of
creditors.

In pursuance of authority and direction given by
the stockholders, Cox, as agent of the corporation,
subsequently sold at public auction the entire dis-
tillery property, Paul Jones becoming purchaser at.

one hundred and twenty-five thousand dollars ; and February 12, 1890, a deed was executed whereby J. G. Mattingly & Sons, corporation, J. G. & B. D. Mattingly as partners and individually, and Attilla Cox, assignee of the firm of J. G. Mattingly & Sons, and of the members thereof individually, conveyed to Paul Jones, trustee, the tract of land mentioned and entire distillery property thereon; "*also good will of the firm name* of J. G. Mattingly & Sons, and all trade-marks, brands and labels belonging to said party of the first part, including the brand of J. G. Mattingly & Sons, long used by the party of the first part, and its grantors and assignors in branding their whisky." It was stipulated and agreed that the parties of second and third parts, being J. G. & B. D. Mattingly, members of the firm, and individually, and their assignee, Cox, claimed no right, title or interest in said property, but united in the deed to perfect description of it, and to confirm all former conveyances.

That deed having, as recited therein, been made to Paul Jones in trust that he thereafter convey all the property to "J. G. Mattingly Company," a corporation recently, and, according to law, organized, he did, February 27, 1890, execute the trust whereby it became legal owner and in possession of all property and rights mentioned in preceding deeds.

June 2, 1890, J. G. Mattingly Company brought this action against J. G. Mattingly and B. D. Mattingly for an injunction, which was granted temporarily, restraining them from making or causing made a certain lot of one thousand barrels of whisky or branding it

with name of J. G. Mattingly Company, or receiving and opening any letters or telegrams addressed to J. G. Mattingly & Sons, to Falls City Distilling Company, the Dougherty Distilling Company or to J. G. Mattingly Company, or interferring in any manner with said letters and telegrams or with the good will of plaintiff's business or its use of the brands and trade-marks, including name of J. G. Mattingly & Sons, transferred and sold in the manner mentioned.

The answer of J. G. & B. D. Mattingly was made a counter-claim, and injunction asked restraining plaintiff from receiving and opening mail matter or telegrams addressed to J. G. Mattingly & Sons, Falls City Distilling Company or the Dougherty Distilling Company. Further relief prayed for was reformation of that part of the deed to Paul Jones, which purports to convey good will of the firm of J. G. Mattingly & Sons.

As to the latter remedy, it may as well be now said defendants are, in our opinion, clearly not entitled to it. They had already transferred beyond recall to the corporation, J. G. Mattingly & Sons, and its successors and assigns, good will of the firm of J. G. Mattingly & Sons, and, as recited, they were parties in the deed to Jones, merely "to perfect description of said property and to confirm all previous conveyances." Besides, good will of the firm was as part of the distillery property then owned exclusively by J. G. Mattingly & Sons, corporation, publicly and in express terms sold to Jones, and fully paid for by plaintiff.

The trade marks or names long used by the firm

of J. G. Mattingly & Sons, and during its existence also by J. G. Mattingly & Sons, corporation, and to which plaintiff acquired title in the ma ner mentioned, are in two forms, viz: "J. G. Mattingly & Sons, Standard Bourbon, Est. 1845, Louisville, Ky.," and "J. G. Mattingly & Sons Pure Rye, Est. 1845, Louisville, Ky." They had also habitually branded on the revenue head of each barrel of whisky manufactured at that distillery, as required by s atute of the United States, the following: "J. G. Mattingly & Sons, Distillers." And that a trade-mark or trade name, such as the two described, affixed to an article manufactured at a particular place, may be lawfully sold and transferred with the establishment, is no longer an open question in this State. (Dant v. Head, 90 Ky., 255.) For "its subsequent use by the person to whom the establishment is transferred is considered as only indicating that the goods to which it is affixed are manufactured at the same place, and are of the same character as those to which the mark was attached by its original designer." (Kidd v. Johnson, 100 U. S., 620.)

It appears that, immediately after its purchase, plaintiff, The J. G. Mattingly Company, commenced to operate the distillery in question and use as their own the trade-mark or name and brand referred to, J. G. Mattingly being employed as superintendent. But about April 17, 1890, Jones, Munday & Co., whisky dealers in California, and former customers of J. G. Mattingly & Sons, addressed to J. G. Mattingly, at Louisville, the following telegram: "Quote lowest net cash price for Standard Mattingly in Kentucky and California cooperage to be made next week."

There is no pretense the telegram referred to any
other whisky than that manufactured according to
the established and long used formula at the distillery
in question; and "good will" of the firm name and
business of J. G. Mattingly & Sons, which plaintiff
had purchased and paid for, entitled it, according to
even the narrowest definition of that term, to the
telegram, and whatever advantage would result from
the business transaction thus proposed by a customer
of the firm.   But instead of delivering to plaintiff, as
it was his moral and legal duty to do, J. G. Mattingly
permitted B. D. Mattingly, not then engaged in man-
ufacturing whisky, but doing business as a mere
broker, to get possession of and attempt to use it
for their own benefit.   The mode they adopted was
to get some corporation or firm to manufacture the
quantity desired by Jones, Munday & Co. at a price
that would allow a margin of profit for themselves,
and after having failed to induce plaintiff to make
the whisky, they entered into a contract with another
manufacturer to fill the order, the telegram being in
the meantime kept concealed.

That their intention was by some device, if not by
actual use of the trade name of J. G. Mattingly &
Sons, to induce belief the whisky they contracted for
had been made at the distillery in question and ac-
cording to the formula long used there, and thus
defraud and injure plaintiff, is shown by a letter B.
D. Mattingly, April 21, 1890, wrote to Jones, Munday
& Co., in which he proposed a secret contract for man-
ufacture on joint account of whisky having the Mat-
tingly brand on it.   In that letter is this significant

language: "We can use all the Mattingly thunder we want, save the exact brands."

About the same time he gave notice to the postmaster at Louisville, and also to those in charge of the telegraph office there, to deliver to plaintiff no letter or telegram addressed to J. G. Mattingly & Sons, to Falls City Distillery Company or to the Dougherty Distilling Company.

As appears from the evidence, whisky manufactured by J. G. Mattingly & Sons at that distillery had, by reason of the formula used and long continuance of the business, become extensively and favorably known. It is, therefore, manifest the trade-mark or name associated in the public mind with the place of manufacture, coupled with good will of the original firm, constituted a very great inducement for purchase of the property by plaintiff. But a trade-mark and good will of a manufacturing establishment can not long be of much value, if the designer and former owner is permitted, as defendants have attempted, by imitating trade-marks and brands or other fraudulent devices, to cause the public to associate with that establishment goods manufactured at a different place and probably of an inferior quality. Nor is the good will of a retiring firm worth much to a purchaser, if the seller may, with impunity, cut off communication with customers by intercepting business letters and telegrams, or other fraudulent practices.

It seems to us plaintiff, upon the state of facts alleged and proved, is clearly entitled to have the injunction perpetuated, and that defendants have no cause of counter-claim whatever. And the only ground upon

which the injunction was dissolved and action dis-
missed by the lower court is, that plaintiff had, prior
to commencement of it, been in the habit of branding
on the revenue head, as distinguished from commercial
head of each barrel of whisky manufactured at that
place, the words, "J. G. Mattingly & Sons, *Distil-
lers;*" and being thereby guilty of fraud, could not be
heard in a court of equity, although before final de-
termination of the action that practice had been dis-
continued, and instead the brand of "J. G. Mattingly
Company, Distiller," was used.

We need not now inquire or decide whether as a
fact the public was thus defrauded, or the practice
was intentionally deceptive, because plaintiff was un-
questionably entitled to benefit and advantage of the
trade-marks described and good will of the firm, and
the simple issue involved in this case is whether such
right shall be infringed or violated by defendants in
the manner they have threatened and attempted to
do it. And to turn plaintiff out of court because it
has done an act having no necessary connection with
use and enjoyment of the trade-marks and good will
that defendants are illegally attempting to deprive it
of, would, in our opinion, be an unreasonable appli
cation of a rule of equity practice for sole benefit of
wrong-doers.

It appears that at different times lots of whisky
were manufactured at that distillery and variously
branded with trade-marks or names adopted by that
firm, such as "Falls City Distilling Co.," "Dougherty
Distilling Co.," &c. At date of sale and conveyance
of the distillery property, barrels of whisky so branded

were in bond in warehouses attached thereto, the possession and control of which passed by the deed to plaintiff, and letters and telegrams in regard thereto were also attempted by B. D. Mattingly to be improperly intercepted and diverted from plaintiff.

In our opinion the injunction temporarily granted ought to have been perpetuated, and it was error to either dissolve it or dismiss the action, though the counter-claim was properly dismissed.

Wherefore, the judgment on appeal is reversed, and on the cross-appeal by defendants affirmed, and the case remanded for proceedings consistent with this opinion.