723

**NISLEY SHOE CO. v. NISLEY CO. et al.**

**No. 728.**

District Court, S. D. Ohio, E. D.

Dec. 16, 1932.

Toulmin & Toulmin, of Dayton, Ohio, and Harry C. Hull, of Springfield, Ohio, for plaintiff.

Arnold, Wright, Purpus & Harlor, of Columbus, Ohio, for defendants.

HOUGH, District Judge.

Charles L. Nisley is, and has been, continuously since 1905, a successful retail shoe merchant in the city of Springfield, Ohio. In 1905 he purchased a retail shoe business in that city, and incorporated it under the trade-name of the Nisley Arcade Shoe Company, until the year 1926, when he transferred the business from the Arcade building to other quarters, and changed the corporate name to the Nisley Shoe Company, the plaintiff in this suit. Nisley has been the virtual owner of the business since its inception; minority shares being held by other persons as incorporators and directors of the corporation.

Nisley purchased his shoes from various manufacturers and wholesalers, among which for many years was the defendant, the G. Edwin Smith Shoe Company. Throughout the years of business operation, the shoes as well as the containers carried the trade-mark and trade-name "Nisley," his own surname. The business was primarily local, but as time went on there was a gradual widening of the sale territory, for the most part made up of old customers who had removed from Springfield. Through consistent business management and advertising, this business developed and maintained a high position for both volume and quality of merchandise in the retail trade.

The defendant, the G. Edwin Smith Shoe Company, its business and factories located in Columbus, Ohio, the capitol of the state, and fifty miles distant from Springfield, was and

is a manufacturer of shoes, and has had for many years, and until the spring of 1929, the plaintiff and its predecessor in name, as one of its customers.

Early in 1924, the defendant, the G. Edwin Smith Shoe Company, in order to stimulate its business and to furnish an outlet for its product, gave consideration to the establishment of retail stores. With such an embryo plan in view, it was decided to call in an experienced shoe dealer. Nisley was selected, and a conference was had between G. Edwin Smith, president of the defendant company, and Nisley, in which the advantages and disadvantages of such an arrangement were discussed. A later meeting took place, in which it was decided to undertake the experiment, and Nisley's services were solicited and obtained to further the plan. In order not to jeopardize its business with its other customers, the defendant company was desirous that the project be carried out independent of the G. Edwin Smith Shoe Company. In the course of the discussions with Nisley, it was suggested by G. Edwin Smith, that his, Nisley's, name be used, as one appropriate and long identified with the retail shoe business. Nisley readily consented to this, and it was decided to organize a corporation under the name of the Nisley Company, with its place of business located at Springfield, Ohio. This was forthwith done; Nisley was made president, 500 shares of stock were issued to him, and one share each to four individuals who, along with Nisley, were the incorporators of the company. The G. Edwin Smith Shoe Company, defendant, was to furnish the capital, and an executive of that company and Nisley were to locate, organize, and put in operation the chain of retail shoe stores under the new corporate name of the Nisley Company. The shoes and the containers were to be marked with the trade-mark "Nisley." The 500 shares of stock issued to Nisley were signed by him in blank, and remained at all times in the possession of the Nisley Company.

The project developed satisfactorily, and at the end of the first year ten stores had been installed in various states, and two years later the number had increased to thirty. At the first annual meeting in April, 1925, additional shares of stock were issued to the defendant, the G. Edwin Smith Shoe Company. Until the fall of 1925, nothing had been discussed in relation to any interest of Nisley in the project, or any compensation for his services. At that time the question of his salary was raised by G. Edwin Smith, and it was stated that $15,000 per annum might be considered a reasonable salary. This amount, at the suggestion of Nisley, was reduced to $12,000 per annum, and he was paid as salary at that rate during the time of his connection with the Nisley Company.

At the first annual meeting in 1925, a resolution was adopted, changing the principal place of business of the defendant, the Nisley Company, from Springfield, Ohio, to Columbus, Ohio. During the period of the development of the chain stores, a standard store front was adopted, which was installed in all the Nisley group, including Nisley's own store at Springfield, Ohio.

On the 2d of March, 1927, the president of the defendant, the G. Edwin Smith Shoe Company, by letter to Nisley, said in substance that the project had been completed and the job finished; that there was no further use for Nisley's services in the capacity in which he had served; and that there was no executive position open for him, and requested his resignation. This letter was answered by Nisley on March 10th, in which he tendered his resignation. Thereupon Nisley was paid the par value of one share of stock. His connection terminated on April 1, 1927. Nisley continued in the operation of his own store at Springfield, using his trade-name in the conduct of his business, and the trademark "Nisley" on the merchandise, and continued to buy merchandise from the defendant, the G. Edwin Smith Shoe Company. On March 29, 1929, Nisley's counsel, by letter, served notice of infringement of the trademark "Nisley," upon the defendant, the G. Edwin Smith Shoe Company, and the defendant, the Nisley Company. Thereupon, the defendant, the G. Edwin Smith Shoe Company, declined to furnish any more merchandise to the Nisley Shoe Company, and terminated a business connection that had existed for many years.

Subsequently, the Nisley Shoe Company filed its bill of complaint in this court for the infringement of the trade-name and trademark "Nisley," and for injunction against the defendants, the Nisley Company and the G. Edwin Smith Shoe Company, and for an accounting for damages, based upon the profits. The latter claim is grounded upon allegations in the bill of complaint that the defendant, the G. Edwin Smith Shoe Company, in 1924 entered into a contract with Nisley to pay him a substantial and valuable consideration, other than salary, for the use of his trade-name and trade-mark, and by an amendment to the bill of complaint it is further claimed that the consideration understood and intend-

ed was a large block of the stock of the Nisley Company.

The separate answers of the defendants deny infringement and damages, and cross-bill was filed by the Nisley Company claiming infringement of the trade-name and the trade-mark, and praying for injunction.

█ The complainant, sustaining the burden of proof, has failed in his proof to establish a contract for damages due him in money or in stock of the defendant, the Nisley Company. No substantive evidence appears to indicate any definite meeting of minds upon a consideration that would sustain an express contract, nor is there proof by evidence or circumstances that would justify the finding of an implied contract, even if such conclusion would furnish a basis for an equitable accounting. The plan adopted from the negotiations had was undoubtedly considered by both parties to be purely experimental. Nisley may have thought, and probably did, that if the plan was successful, his remuneration would be material and ample. Smith, the president of the shoe company, may have so intended, or, on the other hand, he may have intended at all times to purchase the services of Nisley on a salary basis. No binding features were presented by document or oral conversation. The plaintiff is not entitled to an accounting.

█ The indefiniteness, incompleteness, and looseness with which the initial arrangements were made, leading to the successful development of the chain of retail stores, applies with equal force to the question of infringement. Permission to appropriate the trade-name and use the trade-mark "Nisley" was asked and given. No documentary or other evidence appears tending to show a transfer, grant, conveyance, or sale of the Nisley trade-name or trade-mark to either of the defendants at any time. The name was Nisley's. It was his birthright. He had used it in both capacities during all his business career, and is still using it. This fact is and was equally and intimately known to the defendant, the G. Edwin Smith Shoe Company, because it had sold him shoes for many years prior to and all during the development period, and subsequently thereto, up until the time of Nisley's notice of infringement. The business of all the parties had for many years been conducted in the same territory. The dedication of the use of the name to the interest and business of the G. Edwin Smith Shoe Company, and later the Nisley Company, was essentially and only a permissive use, revokable

at will. McLean v. Fleming, 96 U. S. 245, 258, 24 L. Ed. 828; compare Kidd v. Johnson, 100 U. S. 617, 25 L. Ed. 769; Menendez & Holt, 128 U. S. 514, 9 S. Ct. 143, 32 L. Ed. 526; Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713.

█ The instant case is based upon the law of unfair competition, in which the common law of trade-marks is involved. The continuous use made by Nisley of both the trade-name and trade-mark, in conjunction and as a part of the good will of his business and with the knowledge of the defendants, is conceived to give him a continued protective right as against the defendants in its use. Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713. And the connected and continuous use takes it out of the principle announced in United Drug Co. v. Theodore Rectanus Co., 248 U. S. 90, 39 S. Ct. 48, 51, 63 L. Ed. 141, wherein it was said: "The owner of a trade-mark may not, like the proprietor of a patented invention, make a negative and merely prohibitive use of it as a monopoly."

The defendant, the Nisley Company's cross-bill is predicated upon a claim of infringement by the plaintiff and Nisley of the same trade-name and trade-mark, and the reasons set out for this claim are that the defendant company has, with the knowledge of the plaintiff and Nisley, used both the name and the mark, and has extended the market territory to wider bounds and to many states of the Union, and has expended several hundred thousand dollars in advertising and in installing retail stores at great expense. There is no claim of right, except by user and development. No claim of a grant, conveyance, or sale. The defendant, the G. Edwin Smith Shoe Company, received what they requested; namely, the permission to use the name and the mark. To allow this permissive use to ripen into a property right under the circumstances of this case, seems to be inconsistent with the principles of equity. The defendant knew full well the effective limitations upon the use, and what it did in the expenditure of its capital, and its business expansion was done with that knowledge and at its peril. Nor is it thought that the defense of laches may be brought to bear to overcome the situation presented by the facts and circumstances.

The injunction prayed for in the bill of complaint is granted, and the cross-bill of the defendant, the Nisley Company, is dismissed at its cost.