LILLIE A. CHADWICK vs. ALEXANDER H. COVELL.

Bristol.   October 25, 1889. — February 27, 1890.

Present : DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Equity — Trade Secret — Formula for Medicine — Trade-mark.*

A manufacturer of medicines according to secret formulas of his own, which he sold under various names and labels, died, and his administratrix transferred the formulas and trade-marks by way of gift to one who proceeded to make the medicines with her own plant and appliances, and to sell them under the same names and labels. Subsequently the administrator *de bonis non* of the original manufacturer conveyed by deed the same formulas and trade-marks to another, who began to make and sell the medicines in the same way as the donee. *Held*, that the donee, even if the gift were valid, had no such exclusive right to make the medicines or to use the trade-marks as entitled him to prevent the grantee from making and using them.

HOLMES, J.   This is a suit brought for an injunction and damages in respect of the defendant's manufacture and sale of certain medicines under the name of " Dr. Spencer's Queen of Pain," and " Spinal Paste or Salt Rheum Cure," and his use of alleged trade-marks for the same.   Issues were framed for the jury on the question whether the plaintiff was the owner of the formulas for the medicines and of the trade-marks used by Dr. Spencer, and these issues came on for trial.   As the whole case was pending in the Superior Court, it is hardly to be supposed that it was understood that every question except those raised by the issues in their narrowest sense was left for trial at another time.   It seems plain, at the least, that the rulings of the judge were made on the footing that the question before him was whether the plaintiff had such an exclusive ownership as she alleged in her bill, and as entitled her to an injunction, and that the judge was right in that understanding.   If the issues were construed more narrowly than that, the trial by jury was a waste of time.

The plaintiff's case, on her evidence, is as follows.   Dr. Spencer, of New Bedford, made these medicines according to certain secret formulas of his own, and sold them under the names mentioned.   The plaintiff became intimate with him; and after his

death Mrs. Spencer, his administratrix, said to the plaintiff that it was the doctor's wish and her wish that the plaintiff should have the formulas of the Queen of Pain and the Spinal Paste, and the trade-marks, and the circulars and labels, and everything that went with the Queen of Pain and the Spinal Paste, and that was her reward for her kindness. These formulas were written on paper. Mrs. Spencer handed them to the plaintiff, and she took them. At that time the plaintiff took some of the Queen of Pain that was manufactured and on hand. There was not any Spinal Paste made then. She took none of the labels at that time. Three days later Mrs. Spencer died, and a teamster carried the rest of the medicine to the plaintiff's house. After that, the plaintiff began to manufacture and sell the medicines. The sisters and next of kin of Dr. Spencer and his administrator *de bonis non* subsequently signed papers purporting to ratify Mrs. Spencer's dealings with the plaintiff ; the administrator using words implying that the plaintiff had a right, but not necessarily an exclusive right. The administrator also sold the plaintiff two dies used by Spencer for stamping packages of the Spinal Paste. After these transactions the administrator *de bonis non* conveyed by deed to the defendant, for two hundred dollars, Spencer's recipes and trade-marks for these medicines, excepting rights, not specified, theretofore granted by Spencer, Mrs. Spencer, or himself, and it seems had sold him moulds for bottles for the Queen of Pain at a much earlier time. The defendant made and sold the medicines with labels like those used by Dr. Spencer. The judge ruled that the evidence would not support a decree for the plaintiff, directed the jury to answer the questions in the negative, ordered the bill to be dismissed, and reported the case.

So far as the right to manufacture and sell the medicines goes, the plaintiff's case may be disposed of in a few words. Dr. Spencer had no exclusive right to the use of his formulas. His only right was to prevent any one from obtaining or using them through a breach of trust or contract. Any one who came honestly to the knowledge of them could use them, without Dr. Spencer's permission and against his will. *Peabody* v. *Norfolk*, 98 Mass. 452, 458. *Morison* v. *Moat*, 9 Hare, 241, 263. *Williams* v. *Williams*, 3 Meriv. 157. The defendant got his knowl-

edge honestly, and therefore has a right to make and sell the medicines.

Having the right to make and sell the medicines, the defendant has the right to signify to the public that the medicines are made according to the formulas used by Dr. Spencer. The only question is whether the plaintiff has the right to restrain him from using Dr. Spencer's trade-marks. The defendant argues that an executor or administrator has no right to give away the estate coming to his hands, and therefore that the plaintiff got no title to any property of Dr. Spencer by Mrs. Spencer's dealings with her, since those dealings were at most a mere gift. But there has been no attempt to avoid the transaction on behalf of any one interested. The creditors of the estate have all been paid, and the next of kin assented to the gift. So far as this objection goes, we shall assume that, even if the gift was a breach of duty on the part of Mrs. Spencer, it gave the plaintiff a title, as against third persons, to anything which it was otherwise competent to give her. *Myers* v. *Meinrath,* 101 Mass. 366.

We assume for the purposes of our decision, but without expressing an opinion on either question, that what took place between Mrs. Spencer and the plaintiff purported to be a present gift of the trade-marks, and that, if the gift of a trade-mark in gross would have been good if by deed, it would be equally good at common law when made by parol. The old rule was, "Everything which is not given by delivery of hands, must be passed by deed." Noy, Maxims, 62, c. 33. Fairfax, J., in Y. B. 21 Hen. VII. 36, pl. 45. Shep. Touch. 229. But the formalities required by the early common law have been broken in upon a good deal, although more in England than in this State. It may be that later forms of property not admitting of delivery, but unknown to the old law or not then the subject of transfer, are free from the restraints of the ancient rule ; just as, at Rome, later forms of property could be conveyed without the comparatively archaic ceremonies of mancipation. It may be that even an oral gift of incorporeal personal property would be sustained, although delivery is impossible from the nature of the case. But that question we leave undecided. See Browne, Trade-marks, (2d ed.) § 361 and note ; Lowell, Transfer of

Stock, § 43 ; 2 Kent, Com. (13th ed.) 439 ; *Grover* v. *Grover*, 24 Pick. 261, 263 ; *Bond* v. *Bunting*, 78 Penn. St. 210, 218 ; *Hewlins* v. *Shippam*, 5 B. & C. 221, 229.

We also refrain from considering whether the sale of the two dies to the plaintiff would not be sufficient to give her the right to use the marks upon them, (*Stevens* v. *Gladding*, 17 How. 447, 452,) and we pass to what seems to us the insuperable difficulty in the case.

What is the plaintiff's position when she seeks to prevent the defendant from selling his medicine by the name of " Dr. Spencer's Queen of Pain ".? She is not Dr. Spencer. She is not the owner of a manufactory once owned by him. She makes the medicine with her own ingredients, tools, plant, and contrivances. She has no exclusive right to make it. The defendant's use of the name does not mislead the public any more than hers does as to the maker, the place of manufacture, or the nature or quality of the goods. Unless, therefore, it should be held that a trade-mark may be erected into a new species of property, capable of lasting as long as the world does and certain goods are manufactured, and of being transferred for value or by gift from person to person irrespective of good will, special right to make the goods, place of manufacture, or fraud of any kind upon the public, the plaintiff cannot prevail.

Undoubtedly, the exclusive right to use a certain collocation of words or signs to designate a certain class of goods may have a considerable money value as an advertisement, but the fact that a right would have a money value, if it existed, is not a conclusive reason for recognizing the right. The exclusive right to particular combinations of words or figures, after they have been published, for purposes not less useful than advertising, — for poetry, or the communication of truths discovered for the first time by the writer, — for art or mechanical design, — now at least is a creature of statute, and is narrowly limited in time. When the common law developed the doctrine of trade-marks and trade names, it was not creating a property in advertisements more absolute than it would have allowed the author of Paradise Lost ; but the meaning was to prevent one man from palming off his goods as another's, from getting another's business or injuring his reputation by unfair means, and, perhaps,

from defrauding the public. Indeed, the plaintiff would not claim an absolute property in the marks and names merely as such. She would not argue that she had a right to forbid their use for any purpose by others apart from the medicine, or in connection with some entirely different class of goods.

It is true that some judges, noticeably Lord Westbury, have preferred to rest the protection to trade-marks on the notion of property, rather than of fraud; but it is plain, upon reading his judgments, that he means no more than that the deception which equity will prevent need not have been intended, as when a man ignorantly adopts a trade-mark already in use, and that within certain limits a trade-mark may be sold, which nobody denies. *Hall* v. *Barrows,* 4 DeG., J. & S. 150, 158. *Leather Cloth Co.* v. *American Leather Cloth Co.* 4 DeG., J. & S. 137. The limitations are clearly marked by the language of Lord Cranworth and Lord Kingsdown in the latter case, on appeal to the House of Lords. 11 H. L. Cas. 523, 534, 538. See also *Singer Manuf. Co.* v. *Loog,* 8 App. Cas. 15, 29 *et seq.*; *Wotherspoon* v. *Currie,* L. R. 5 H. L. 508, 514, 519 ; *Ainsworth* v. *Walmsley,* L. R. 1 Eq. 518, 525 ; *Collins Co.* v. *Brown,* 3 Kay & Johns. 423, 426. At least as strict a rule is to be drawn from the Pub. Sts. c. 76, § 1, and *Gilman* v. *Hunnewell,* 122 Mass. 139, 148.

If the nature and foundation of the right is what we suppose, then the reason why, and the limits within which, a grantee will be protected, are plain. The most usual case is when a trade-mark means that goods come from a certain manufactory, and the manufactory and mark change hands together; e. g. *Hoxie* v. *Chaney,* 143 Mass. 592; *Warren* v. *Warren Thread Co.* 134 Mass. 247 ; *Kidd* v. *Johnson,* 100 U. S. 617, 620. The use of the mark by a third person would be as much a fraud upon the grantee as it would have been upon his grantor; therefore the grantee will be protected. *Singer Manuf. Co.* v. *Loog,* 8 App. Cas. 15, 17. *Jennings* v. *Johnson,* 37 Fed. Rep. 364. But our decisions have gone no further. *Sohier* v. *Johnson,* 111 Mass. 238, 244. See *Cotton* v. *Gillard,* 44 L. J. Ch. 90; *Congress Spring Co.* v. *High Rock Spring Co.* 45 N. Y. 291, 302; *Dixon Crucible Co.* v. *Guggenheim,* 2 Brewst. 321, 339; and cases *supra.*

It may be that similar principles would apply if the plaintiff had the exclusive right of manufacturing the medicines, although she was not strictly a successor to Dr. Spencer's business, and did not have his manufactory or plant.   See *Morison* v. *Moat,* 9 Hare, 241, 267 ; *In re Palmer's Trade-mark,* 24 Ch. D. 504, 520 ; *Menendez* v. *Holt,* 128 U. S. 514, 520.   But that is not this case.   The only significance of Dr. Spencer's marks at the present time, by whomsoever used, is to indicate a class of goods which any one who knows how to do it may lawfully manufacture.   The case more nearly resembles *Thomson* v. *Winchester,* 19 Pick. 214, 216.   See *Emerson* v. *Badger,* 101 Mass. 82, 86 ; *Goodyear's India Rubber Glove Manuf. Co.* v. *Goodyear Rubber Co.* 128 U. S. 598 ; *In re Leonard & Ellis's Trademark,* 26 Ch. D. 288 ; *Singer Manuf. Co.* v. *Loog,* 8 App. Cas. 15, 26, 27, 37, 38.   There is a slight analogy also to the cases where a patentee has been denied the exclusive right to the name of his patented article as a trade-mark after the patent has expired.   *Linoleum Manuf. Co.* v. *Nairn,* 7 Ch. D. 834.   *In re Palmer's Trade-mark,* 24 Ch. D. 504, 517, 521.   *In re Ralph's Trade-mark,* 25 Ch. D. 194, 199.   *Coats* v. *Merrick Thread Co.* 36 Fed. Rep. 324.   We are of opinion that, assuming that there was a gift to the plaintiff otherwise valid of Dr. Spencer's trademarks, it did not give her the right to prevent the defendant from using the same words and devices.   Our decision makes the exclusion of evidence of Dr. Spencer's expressions of intention immaterial, although there seems to be no doubt that the evidence was properly excluded.

*Decree affirmed.*

*E. L. Barney,* for the plaintiff.
*E. Avery & T. F. Desmond,* for the defendant.