ALEXANDER H. COVELL *vs.* LILLIE A. CHADWICK.

Bristol.   November 1, 1890. — February 25, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Equity Practice — Report — Libel — Trade-mark.*

If a report is made in equity by a single justice with the intention of presenting merely the question whether the decree is supported by the facts found, it is not open to a party to object that he was injured by a direction at the hearing to limit the testimony to certain questions, in the absence of any request to have the evidence reported or the direction revised, or of any expression of dissatisfaction therewith.

A bill in equity will not lie to restrain the defendant from libelling the plaintiff, unless it is shown that the libels are something more than false representations as to the character or quality of the plaintiff's property, or as to his title thereto.

On the death of one who manufactured medicines according to secret formulas of his own, which he sold with various trade-marks, his administratrix transferred the formulas and trade-marks by way of gift, and several years later his administrator *de bonis non* conveyed them by deed to another. Both the donee and grantee made the medicines each with his own plant and appliances, and sold them with the same trade-marks. *Held*, that the grantee had no such exclusive right to use the trade-marks as entitled him to prevent the donee from using them.

BILL IN EQUITY, filed February 11, 1888, to recover damages, and to prevent the defendant from manufacturing and selling certain medicines under the names of "Dr. Spencer's Queen of Pain" and "Spinal Paste or Salt Rheum Cure," from using certain trade-marks for the same, and from libelling the plaintiff. The case was heard by *C. Allen*, J., and reported for the consideration of the full court, and was as follows.

No request was made at the hearing that the evidence should be taken down for the purpose of revising the judge's findings of fact. The judge directed the testimony to be limited to the following questions: "1. What transfers or conveyances there were to the plaintiff and to the defendant, showing the titles under which the parties respectively claim. 2. Whether the parties respectively compound their medicines and remedies from the formulas of Dr. Spencer, and what those formulas are. 3. The dates when the parties respectively began to use the labels and alleged trade-marks."

The following facts were in evidence or were admitted. Dr. Spencer made the medicines in question according to secret formulas of his own, and sold them under the names above mentioned. He died in July, 1883, and Mrs. Spencer, his administratrix, a few days before her own death, on May 4, 1884, said to the defendant that it was her wish that the defendant should have the "Queen of Pain" and the "Spinal Paste," and the trade-marks, labels, bottles, and everything that went with them, and at the same time handed to the defendant the formulas for these medicines, and the defendant took them. A few days after the death of Mrs. Spencer, her sister, a Mrs. Stetson, orally transferred to the plaintiff a formula in the handwriting of Dr. Spencer for the "Queen of Pain" and "Spinal Paste." On June 6, 1887, Alanson Borden, administrator *de bonis non* of the estate of Dr. Spencer, having already ratified the transfer by Mrs. Spencer to the defendant, sold to the defendant "two dies for stamping bottles, boxes, and any other form of package of Dr. Charles L. Spencer's Spinal Paste or Salt Rheum Cure, being the same used by said Spencer in his lifetime for that purpose." On December 16, 1887, Borden, as such administrator and as executor of the will of Mrs. Spencer, in consideration of two hundred dollars, sold the formulas for the "Queen of Pain" and the "Spinal Paste" to the plaintiff, "saving and expressly excepting

from the sale, transfer, and conveyance aforesaid all the rights and privileges in respect to the subject matter thereof heretofore given or granted by the said Charles L. Spencer, or by myself or any other legal personal representative of either the said Charles L. Spencer or the said Sarah T. Spencer in that behalf."

The judge found that "it was the intention of Mrs. Spencer that the defendant should have the right to use both formulas, with the labels, wrappers, etc. serving to identify the remedies"; and that "there was no fraud on the part of the defendant in obtaining or using the formulas, labels, or wrappers, or so called trade-marks."

*E. Avery & T. F. Desmond*, for the plaintiff.

*E. L. Barney*, for the defendant.

KNOWLTON, J.   It appears by the report in this case, that, at the hearing, there was no request that the evidence should be taken down with a view to a revision of the findings of fact by the full court, and it seems to have been the intention of the presiding justice to present upon this report merely the question whether the decree is supported by the facts found.   There is nothing to indicate that the plaintiff, at the trial, expressed dissatisfaction with the direction given by the judge to the taking of testimony, or that he at any time intimated a desire to have that direction revised upon an appeal or a report; and we are of opinion that, on the report, it is not now open to the plaintiff to contend that he was injured by the limitation of the testimony to the questions considered.

But if it were open, we see no error in this particular.   The appeal relates to nothing but the rights and the conduct of the parties in reference to names, letters, marks, devices, figures, formulas, and trade-marks, once used by Dr. Charles L. Spencer in connection with the manufacture of certain medicines.   So far as the bill charges libels by the defendant on the plaintiff, unless he can show that they are something more than mere false representations as to the character or quality of his property, or as to his title thereto, he is not entitled to a remedy by injunction. *Boston Diatite Co.* v. *Florence Manuf. Co.* 114 Mass. 69.   *Brandreth* v. *Lance*, 8 Paige, 24.   *Fleming* v. *Newton*, 1 H. L. Cas. 363, 376.   His case depends upon his title and the title of the defendant to that which once belonged to Dr. Spencer.   The three questions in regard to which evidence was received seem

to embrace everything which is material to the plaintiff's claims. At all events, the plaintiff has brought to our attention nothing which could have been important that has not been fully heard.

Sarah T. Spencer, the widow of Dr. Charles L. Spencer, was the administratrix of his estate, and the defendant, without fraud, obtained from her formulas for the preparation of the medicines, and she intended " that the defendant should have the right to use both formulas, with the labels, wrappers, etc. serving to identify the remedies." A few days after the death of Mrs. Spencer, and after the defendant had received the formulas, the plaintiff obtained an oral transfer or delivery of them from Mrs. Stetson, who, so far as appears, had no authority to represent the estate of Dr. Spencer or of Mrs. Spencer in making the transfer. His first formal title was by a bill of sale given on December 16, 1887, by Alanson Borden, as administrator *de bonis non* of the estate of Charles L. Spencer, and as executor of the will of Sarah T. Spencer. But Borden had, by a formal instrument, previously ratified the conveyance by Mrs. Spencer to the defendant of the formula for the " Queen of Pain," and in the bill of sale he expressly excepted all rights and privileges previously given or granted by Dr. Spencer, or by himself, or by. any other legal personal representative of either Dr. Spencer or Sarah L. Spencer. The question in the case is whether the plaintiff acquired, as against the defendant, the exclusive right to use the trade-marks formerly used by Dr. Spencer.

In *Chadwick* v. *Covell*, 151 Mass. 190, it was decided that this defendant acquired no such right; and, upon the authority of that case, the defendant contends that the position of the plaintiff is at least no better than her own. It was there held that, against any one honestly obtaining them, there was no exclusive right of property in the formulas, and that a mere transfer of the formulas would give no right to use the trade-marks which Dr. Spencer used. It was assumed that there was a gift of Dr. Spencer's trade-marks to the present defendant, which would have been valid if a trade-mark could have been conveyed to one whose only relation to him, or to the business carried on by him, was that of a donee of the formulas, marks, and labels which he had used; and it was held that the trade-marks were not property which could be conveyed to a mere purchaser or

donee of the formulas in that way. It was said of the defendant: " She is not Dr. Spencer. She is not the owner of a manufactory once owned by him. She makes the medicine with her own ingredients, tools, plant, and contrivances. She has no exclusive right to make it. The defendant's use of the name does not mislead the public any more than hers does as to the maker, the place of manufacture, or the nature or quality of the goods. Unless, therefore, it should be held that a trade-mark may be erected into a new species of property, capable of lasting as long as the world does and certain goods are manufactured, and of being transferred for value or by gift from person to person irrespective of good will, special right to make the goods, place of manufacture, or fraud of any kind upon the public, the plaintiff cannot prevail." All this can be said with equal truth of the plaintiff in the present case. His only title from the representatives of Dr. Spencer was created more than four years and a half after Dr. Spencer's death. He was not the purchaser of a business which was then being carried on in which the trade-marks were used. He did not acquire a right to manufacture medicine in the same place in which the trade-marks had been used, and his right to manufacture it was not exclusive. His bill of sale purports to sell him formulas which had previously been given to the defendant, and which anybody who could honestly obtain them might use; and as incidental to that sale it purported to convey a right to use as trade-marks the labels and designs formerly used by Dr. Spencer. If this had been a sale of the business in which the trade-marks were being used, they would have passed by the conveyance. *Emerson* v. *Badger*, 101 Mass. 82. *Sohier* v. *Johnson*, 111 Mass. 238. *Gilman* v. *Hunnewell*, 122 Mass. 139. *Warren* v. *Warren Thread Co.* 134 Mass. 247. *Russia Cement Co.* v. *Le Page*, 147 Mass. 206. *Frank* v. *Sleeper*, 150 Mass. 583. *Kidd* v. *Johnson*, 100 U. S. 617, 620. But, so far as appears, the business in which the trade-marks were used by the owner of them had been wound up several years before the plaintiff acquired his title, and the plaintiff did not buy a business, or the good will of a business, or anything else which carried with it property in a trade-mark. The principles stated in *Chadwick* v. *Covell, ubi supra*, control the present case.                              *Decree affirmed.*