BENNETT et al. v. McKINLEY et al.

(Circuit Court of Appeals, Second Circuit. January 9, 1895.)

TRADE-MARK—"INSTANTANEOUS" TAPIOCA.

The word "Instantaneous" is not a valid trade-mark, as applied to a preparation of tapioca which is distinguished from other preparations of that article by reason of its adaptability for immediate use, without the preliminary soaking required by other preparations.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

This was a suit by William S. McKinley and others against William D. Bennett and others to restrain the infringement of complainants' alleged trade-mark. The circuit court granted a preliminary injunction. Defendants appeal.

Brewster Kissam (Geo. H. Fletcher, of counsel), for appellants.
Chas. G. Coe, for appellees.

Before WALLACE and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The question in this case is whether the word "Instantaneous" constitutes a valid trade-mark, when applied to a preparation of tapioca which is distinguished from other preparations of that article by reason of its adaptability for immediate use without the preliminary soaking required by other preparations. According to the theory of the complainants, the tapioca sold in this country prior to 1891 was of three varieties,—the flake, pearl, and granulated,—and, in either form, required a prolonged soaking in water, lasting from three to six hours, to prepare it for table use; and one of the complainants, after experimenting to ascertain whether tapioca could not be so treated that this prolonged soaking might be dispensed with, discovered that it could be, by grinding the tapioca to a further degree of fineness. In the fall of 1893 the complainants commenced to manufacture the finely-ground article, and since then have advertised and sold it under the name of "Instantaneous Tapioca." Upon the packages in which it is sold by them is printed this notice: "Requires no soaking, but softens instantly." According to the theory of the defendants, the finely-ground article did not originate with the complainants, but had been imported from France, and had been largely and continuously sold in this country, prior to the enactment of the so-called "McKinley Tariff Act," by the name of "Tapioca Exotique"; and subsequently, induced by the high rate of duty imposed upon it by the McKinley tariff act, the defendants began to manufacture and sell the article in this country. Their article is sold under the name of "Instantaneous Cassava Tapioca." Upon their packages, among others, is printed the following statement: "This substance is soluble in water, forms a nourishing food, and can be prepared instantaneously—without soaking—into puddings, custards, blanc mange, griddle cakes, &c."

There is a marked dissimilarity in the symbols used upon their

packages by the respective parties, and each print their own names upon their own packages, in conspicuous type, as the manufacturers. If the most casual inspection of the packages would not lead a purchaser to discriminate immediately, the difference in their appearance is certainly sufficient to preclude any inference that the defendants have attempted to palm off their article upon the public for the article manufactured by the complainants. It is plain that the complainants are not entitled to relief on the ground of unfair competition. Their case must be determined solely upon the law of trade-mark. No principle of the law of trade-mark is more familiar than that which denies protection to any word or name which is descriptive of the qualities, ingredients, or characteristics of the article to which it is applied. An exclusive right to the use of such a word, as a trade-mark, when applied to a particular article or class of articles, cannot be acquired by the prior appropriation of it, because all persons who are entitled to produce and vend similar articles are entitled to describe them, and to employ any appropriate terms for that purpose. Whether a word claimed as a trade-mark is available because it is a fanciful or arbitrary name, or whether it is obnoxious to the objection of being descriptive, must depend upon the circumstances of each case. The word which would be fanciful or arbitrary when applied to one article may be descriptive when applied to another. If it is so apt, and legitimately significant of some quality of the article to which it is sought to be applied, that its exclusive concession to one person would tend to restrict others from properly describing their own similar articles, it cannot be the subject of a monopoly. On the other hand, if it is merely suggestive, or is figurative only, it may be a good trade-mark, notwithstanding it is also indirectly or remotely descriptive. Of the numerous adjudications which illustrate the application of the rule, it will suffice to refer to a few. In Raggett v. Findlater, L. R. 17 Eq. 29, the name "Nourishing Stout," as applied to a malt liquor, was held to be descriptive. That case was cited with approval by the supreme court in Manufacturing Co. v. Trainer, 101 U. S. 51. In the recent case of Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, the supreme court held that the words "Iron Bitters," applied to a medicine, were descriptive. In Davis v. Kendall, 2 R. I. 566, the name "Pain Killer," as applied to a medicine, was held to be fanciful. The same view was taken of the name "Sliced Animals," as applied to toys consisting of pictures of animals cut into strips or pieces, in Selchow v. Baker, 93 N. Y. 59, and of the words "Lightning Hay Knife," as applied to a knife, in Holt Co. v. Wadsworth, 41 Fed. 34.

Applying the rule to the facts of the present case, we think the word "Instantaneous," as applied to the kind of tapioca dealt in by the parties, is descriptive, and consequently not a valid trade-mark. It not only is aptly and truthfully descriptive of one of the properties of the article to which it is sought to be applied, but it is especially appropriate to point out concisely and accurately the peculiar characteristic which distinguishes the particular tapioca from

other varieties. The order granting an injunction is reversed, and the cause remanded to the circuit court, with instructions to vacate the injunction.