## PENNSYLVANIA SALT MANUF'G CO. v. MYERS.

(Circuit Court, E. D. Missouri, E. D. March 3, 1897.)

### No. 3,905.

1. UNFAIR COMPETITION IN TRADE—IMITATION OF LABELS AND PACKAGES.

Complainant had long sold concentrated lye in cylindrical packages, with labels having a white background and black lines around the margin, and bearing in large black letters the word "Saponifier." Defendant adopted a similar package, and a label with the same word in prominent black letters, placing his own trade-name on the label, and otherwise differentiating the reading matter appearing in small type. He deliberately sought out the localities in which complainant had created a demand for "Saponifier," with the purpose and result of enabling retailers to pass off his article for complainant's. *Held*, that this was unfair competition, and defendant should be enjoined.

2. TECHNICAL TRADE-MARKS—"SAPONIFIER."

"Saponifier," while perhaps suggestive to a Latin student of an article used in soap making, is yet not so descriptive, to ordinary purchasers, as to prevent its appropriation by the coiner of the word as a technical trade-mark for his concentrated lye, especially where his right thereto has been acquiesced in for 35 years.

This was a suit in equity by the Pennsylvania Salt Manufacturing Company against Emanuel Myers, doing business as E. Myers & Co., to enjoin alleged unfair competition in trade, and infringement of a trade-mark.

John M. Holmes, Geo. H. Knight, and Stanley Stoner, for complainant.

Geo. W. Lubke and Winkler, Flanders, Smith, Bottum & Vilas, for defendant.

ADAMS, District Judge. The complainant invokes the aid of this court to restrain the defendant from unfair competition in trade, and to protect its trade-mark or label upon a package of concentrated lye.

1. Complainant's package is cylindrical in form, about two inches in height and two inches in diameter. Its label consists of a wrapper surrounding this package horizontally. The wrapper has a white background, with black lines around its margin, and two or three black lines extending vertically from top to the bottom. These vertical black lines serve as divisions of the subjects treated of on the label. The word "Saponifier," in large, prominent black letters, runs horizontally about halfway around the periphery of this circular package, midway its height. The word "Saponifier" is the striking feature of the label. The complainant adopted this word, as indicating its particular lye, more than 40 years ago. It became many years ago, and has continued to the present time to be, the word designating complainant's lye, and distinguishing it from the lye of other manufacturers. It has been for many years recognized by all lye manufacturers (except defendant and his family) as the property of complainant, and has been generally recognized by the trade, retail dealers and consumers, as the distinguishing word denoting complainant's ownership of the lye on which it appears. Complainant, by judicious and expensive advertisement, has secured a large demand in different localities of this country for its lye, under the name "Saponifier." The defendant some six or seven years ago put up a lye manufactured by him at St. Louis in a package of similar shape and size as that of complainant's. He employed a label with white background, black marginal and intersecting lines, and the word "Saponifier," in large-sized black letters, prominently upon the periphery of his package, in substantially the same relative position as complainant had done. While defendant placed his own trade-name upon his label, and in other respects differentiated the reading matter, appearing in smaller type, from that found on complainant's package, the proof shows that he intended to and did make his article known to the public and to purchasers as "Saponifier." The proof, in my opinion, further shows that defendant deliberately sought out and found the localities in which complainant had created a demand for its "Saponifier," and shipped his own article, under the same distinguishing and prominent name, to the retail dealers of such localities with the intention, in its least obnoxious phase, "of putting into the hands of retail dealers the means of deceiving the ultimate purchasers, and of encouraging them in the use of such means." This is condemned as unfair competition in the very recent case of N. K. Fairbank Co. v. R. W. Bell Manuf'g Co. (U. S. Ct. App., 2d Cir.) 77 Fed. 869. The proof further shows that retail dealers

have zealously employed the opportunity so offered them. They have purchased defendant's "Saponifier" for less than they had been in the habit of paying for complainant's; and, when a purchaser inquired for "Saponifier," they have frequently handed out defendant's article, without comment, charging the same price which consumers had been in the habit of paying for complainant's. In this way the proof shows that the retail dealers have deceived and defrauded the unsuspecting and generally ignorant classes who are the purchasers and consumers of lye. The proof further shows that the defendant and his agents have made use of the possibility of deceiving consumers in the way already stated as persuasive and effective arguments for retail dealers to purchase his "Saponifier" instead of complainant's. He therefore has not only offered the retail dealers an opportunity to mislead and deceive the purchasing public, but the proof shows that he deliberately adopted this scheme of deception for the purpose of taking advantage of complainant's reputation and palming off his own goods as the goods of the complainant. This amounts to unfair competition, in its most aggravated form, and for this reason complainant is clearly entitled to the relief prayed for. McLean v. Fleming, 96 U. S. 245; N. K. Fairbank Co. v. R. W. Bell Manuf'g Co., supra; Coats v. Thread Co., 149 U. S. 562, 13 Sup. Ct. 966; Celluloid Manuf'g Co. v. Cellonite Manuf'g Co., 32 Fed. 94. For a very interesting collection of cases on this subject, reference is made to the note at the end of the case of Scheuer v. Muller, 20 C. C. A. 161, and special attention is called to a recent case in the house of lords, of Reddaway v. Banham, referred to in the note, wherein a defendant was enjoined from describing his belting, although made of camel's hair, as "camel hair" belting, on the ground that complainant, by long use of such descriptive term, had become exclusively entitled to it, as designating his own particular belting, and that customers understood it to mean complainant's belting and nothing else, and that permitting the defendant to apply the term to his belting would deceive purchasers. While this last-mentioned case marks quite an advance in the law under consideration, its tendency to prevent unfair competition is in the right direction.

2. Now, as to the complainant's right to the word "Saponifier" as a technical trade-mark: I was at first impressed with the idea that the word was so descriptive of the article to which it is affixed that it could not be exclusively appropriated by any one, but I think this impression was wrong. To a student who is familiar with the Latin language and the rules of etymology, it may be true that the word "Saponifier," made up of the words "sapo" (soap) and "facere" (to make), would suggest some of the characteristics and qualities of the article to which it referred. It doubtless would suggest that the article had something to do with soap making. The formation of the word indicates that it is a soap maker, but, taken by itself, it imparts no information as to whether such soap maker is a machine, a man, a woman, or a chemical agent. It therefore would not, even to the most erudite, necessarily describe a chemical agent like concentrated lye. But the proof shows that students rarely ever purchase a soap-

making agent. The uneducated part of the community alone generally deal in this article. To them the word "Saponifier," in itself, would probably have no special etymological signification. It would be considered as a fanciful or arbitrary term, and in no sense descriptive of the quality, characteristics, or ingredients of the article. Even if the word did of itself suggest to the ordinary purchaser the chemical action of lye upon grease, such suggestiveness is not fatal to its appropriation as a part of a trade-mark. N. K. Fairbank Co. v. Central Lard Co., 64 Fed. 133. In the last-mentioned case it is held that although the word "Cottolene," designating a substitute for lard, composed of cotton-seed oil and the product of beef fat, is suggestive of the compound, it is not so descriptive of the substance and quality of its component parts that it cannot be used as a trade-mark. At the time the complainant adopted the word "Saponifier," no such word had found its place in any lexicon. As already seen, the word was coined by complainant and applied to its lye as early as 1855, and has been in constant use, as designating complainant's particular ownership, since then. By this word its lye became known to the manufacturers, dealers, and consumers long before defendant or any one else undertook to make use of it. The proof shows that all manufacturers of lye throughout the United States, with the exception of the defendant and his family, have for a long time recognized, and now recognize, that the word "Saponifier" belongs to complainant; that it affords a ready, short, and effective means of indicating that the lye to which it is affixed was manufactured by complainant. In other words, there seems to have been a general acquiescence in complainant's right to this word as a trade-mark from 1855 until 1890. Such long and exclusive use of the word, and such general acquiescence in complainant's exclusive right to it, are facts which the court cannot overlook, and, were the conclusion otherwise doubtful, would certainly turn the scale in favor of complainant. It is said in the case of Bennett v. McKinley, 13 C. C. A. 25, 65 Fed. 505:

"Whether a word claimed as a trade-mark is available because it is a fanciful or arbitrary name, or whether it is obnoxious to the objection of being descriptive, must depend upon the circumstances of each case. The word which would be fanciful or arbitrary when applied to one article may be descriptive when applied to another. If it is so apt and legitimately significant of some quality of the article to which it is sought to be applied that its exclusive concession to one person would tend to restrict others from properly describing their own similar articles, it cannot be the subject of a monopoly. On the other hand, if it is merely suggestive, or is figurative only, it may be a good trade-mark, notwithstanding it is also indirectly or remotely descriptive."

There is no pretense that the word "Saponifier" is a particularly apt description of concentrated lye, or that its exclusive concession to complainant would tend to restrict the defendant or any other manufacturers from properly describing their own goods. I think the only criticism that can be made of this word, affixed to a can of concentrated lye as a trade-mark, is that it is suggestive of one of the uses to which lye can be devoted. But considering the facts of this case, as already partially detailed, I cannot hold that it is so descriptive as to be an invalid trade-mark. The fact that defendant and his father made some use of the word "Saponifier" as early as 1890 cannot affect

the result of this case, when it is considered that their right to do so was at once challenged by complainant, and some supposed temporary adjustment of their differences made. I can find nothing in the leading case of Canal Co. v. Clark, 13 Wall. 311, usually referred to as an authoritative expression of the law on the subject of strict trademark, to incline my mind against the complainant in this case. On the contrary, that case, as I understand it, holds that, as a general rule, any word may be the subject of a trade-mark (that is, to point out the origin or ownership of articles to which it is affixed)·which, at the time of its adoption as such, had not been employed to designate or describe the same or like articles of production. Applying this rule, the case presents no difficulty. As already seen, the word "Saponifier" was a coinage of and appropriation by complainants as early as 1855. It had not before 1855, or until 1890, been used by any other person in connection with any products,—much less as descriptive of any products. The complainant is entitled to the relief prayed for on both grounds stated in its bill, and a decree may be prepared in conformity with this opinion, and submitted to me for consideration.