PETROLIA MFG. CO. v. BELL & BOGART SOAP CO. et al.

(Circuit Court, S. D. New York. August 30, 1899.)

1. TRADE-MARKS—ARBITRARY NAMES.

The name "Coal Oil Johnny's Petroleum Soap," as applied to a particular manufacture of soap to distinguish it from others, may constitute a valid trade-mark.

2. SAME—ASSIGNMENT.

The assignment of a trade-mark by the originator and owner to a corporation organized by him to succeed to the manufacture and sale of the article is valid.

**8. SAME—NOTICE OF OWNERSHIP BY ASSIGNEE.**
      The ownership of a trade-mark by an assignee or transferee is sufficiently indicated by its placing its name as manufacturer on the article sold under such trade-mark.

Manierre & Manierre, for complainant.

Francis M. Eppley, for defendants Bell & Bogart Soap Co., W. H. Bell, and W. H. Bogart.

Buford Franklin, for defendant J. H. Griffin.

TOWNSEND, District Judge. Demurrer to bill for infringement of the registered trade-mark "Coal Oil Johnny's Petroleum Soap," commonly known as "Coal Oil Johnny's Soap." Defendants' brief states 12 points in support of the demurrer, which will be stated and considered in their order.

Point 1:

"The plaintiff is not entitled to protection in this court, for the reason that the words 'Coal Oil,' 'Petroleum,' 'Nature's Petroleum Gift,' contained in the trade-mark, are generic terms or words in common use, and are employed by plaintiff to indicate and describe to the public the ingredients, characteristics, and quality of the soap."

The complainant is not entitled to claim, and does not claim, any exclusive right to the use of the adjective "Petroleum" or "Coal Oil," standing alone, but to the fictitious or fanciful name "Coal Oil Johnny," invented and adopted by its predecessor. That such arbitrary names, when so applied to distinguish one's manufacture from that of others, are valid as trade-marks, has been decided in several cases. Thus "Roger Williams" has been applied to cotton cloth, "Bismarck" to paper collars, and "Falstaff" to tobacco. Browne, Trade-Marks, § 216. That names suggestive of the nature or composition of articles may be valid trade-marks, if not actually descriptive, and may be thus adopted or appropriated, is settled. Thus, "Cocoaine" was applied to cocoanut oil, "Cottolene" to cottonseed oil, and "Maizena" to cornstarch. N. K. Fairbank Co. v. Central Lard Co. (C. C.) 64 Fed. 133; Manufacturing Co. v. Myers (C. C.) 79 Fed. 87. The case of Caswell v. Davis, 58 N. Y. 234, cited and relied on by defendants' counsel, as distinguished and explained by the court of appeals in Keasby v. Chemical Works (N. Y. App.) 37 N. E. 476, affords no support to his contention.

Point 2:

"The plaintiff is not entitled to equity, for the reason that it is guilty of misrepresentation, and cannot come into court with clean hands."

The principal statements in defendants' brief in support of this point are not found in the complaint. The demurrer admits the allegation of the bill that petroleum is one of the ingredients used in the manufacture of the soap. The trade-mark does not necessarily indicate that petroleum is the largest ingredient in said soap.

Point 3:

"The plaintiff has not an exclusive right to the matter alleged in the bill or such interest in the subject-matter of the action as to authorize it to bring this suit."

Defendants' main contention here is that as it is alleged that the Coal Oil Johnny Soap Company has not ceased to exist, and it necessarily has the right to manufacture soap and to use its own name in so doing, therefore complainant has not and cannot have exclusive right to use of said name. It appears from the bill that said company assigned to said receiver all right, title, and interest in said trade-mark, and that said right, title, and interest are now in complainant and said Griffin. It appears from the bill that the Coal Oil Johnny Soap Company has been enjoined from "dealing in soap under the name, brand, or trade-mark of 'Coal Oil Johnny's Petroleum Soap.'"

Point 4:

"The transfer by Jenkins of the trade-mark to the Coal Oil Johnny Soap Company, by assignment, without including the good will or right to use the name of Maross Jenkins, or right to manufacture or sell the soap in question, or without a description of the product, formula, or transfer of the machinery, in conjunction with the assignment, carried no property rights with it."

The bill alleges that Jenkins was the inventor of the trade-mark, and a producer of, and dealer in, said soap, or who had caused said soap to be manufactured or produced for him, and that he "organized a corporation, under the laws of the state of New Jersey, named the 'Coal Oil Johnny Soap Company,' for the purpose of manufacturing and selling said soap," and assigned said trade-mark to said company, subject to a certain condition subsequent. This is not a sale of a trade-mark, as distinct property separate from the article or the manufacturer, but a transfer by the producer of the right to use the trade-name in connection with the corporation and place of business which he has organized and established to manufacture and deal in the article. In Chemical Co. v. Meyer, 139 U. S. 547, 11 Sup. Ct. 628, the supreme court, reviewing Kidd v. Johnson, 100 U. S. 617, and Chadwick v. Covell, 151 Mass. 190, 23 N. E. 1068, cited by defendant, says:

"There are a few cases indicating that the mere right to use a name is not assignable, notably Chadwick v. Covell, 151 Mass. 190, 23 N. E. 1068, but none that it may not be assigned to an outgoing partner, or to a successor in business, as an incident to its good will."

This case also answers the further claim under this point that the trade-mark is a personal one.

Point 5:

"The defendants are not charged in the bill with unfair business competition by palming off their goods as those of the plaintiff."

The bill, after alleging a contract between complainant's assignors and defendants, that they, the defendants, should put up and ship a certain size of said soap as directed by said assignors, states that defendants have repudiated said contract, have sold all sizes of such soap to the trade, "stamped, boxed, wrapped, and labeled in the same manner and style as used by your orator, * * * all in willful and unlawful violation and infringement of your orator's exclusive rights under said trade-mark."

Point 6:

"The contract of March 28th is merged in the judgment."

Said contract was alleged in the complaint in giving an account of the manner in which complainant obtained its present rights. So far as these defendants are concerned, the bearing of this point is not apparent.

Point 7:

"The defendants had a right to rescind their contract with Jenkins after his refusal to purchase soap from them, subsequent to April 30, 1897."

The right of complainant does not rest upon defendants' contract with Jenkins. For the purpose of showing that defendants have no right under that contract, and therefore have no right to manufacture even the eight-ounce bars of soap which Jenkins and the Coal Oil Johnny Company were allowed in said injunction to buy of them, the complainant has alleged that defendants have repudiated the contract, and this point in the brief seems to confirm said allegation.

Point 8:

"The owner of a trade-mark may abandon his rights to it, and others may appropriate it."

The complaint alleges an assignment of the trade-mark by its owner. Jenkins was in no position to abandon it, and the facts alleged do not show an abandonment by him, even if he were competent to make one.

Point 9:

"The complainant has no standing in court, for the reason that it is guilty of misrepresentation and fraud, in that it has used the trade-mark of 'Coal Oil Johnny's Petroleum Soap,' without indicating to the public, in the use of the same, that complainant is, or claims to be, the owner or transferee of said trade-mark."

The complaint alleges that complainant places its own name on its wrappers, and this sufficiently indicates that it claims to be the owner and transferee of said trade-mark, if any such indication is necessary. Browne, Trade-Marks, §§ 144, 145, 697. Godillot v. Harris, 81 N. Y. 263; Lichtenstein v. Goldsmith (C. C.) 37 Fed. 359; Baking-Powder Co. v. Raymond (C. C.) 70 Fed. 376; Feder v. Benkert, 18 C. C. A. 549, 70 Fed. 613.

Point 10:

"The receiver abandoned all rights to the trade-mark and cause of action by discontinuing his cause of action."

This point is not well taken.

Point 11:

"The sale by receiver conveyed no title to Griffin."

The reasons urged by defendants under this point are covered by the former discussion.

Point 12:

"A demurrer only admits facts that are well pleaded."

The bill alleges that Jenkins assigned his trade-mark to the Coal Oil Johnny Company; with reversion to him if that company ceased

to exist; that that company has not ceased to exist; and that the trade-mark has been assigned to defendant Griffin. Under the well-pleaded allegations, complainant has now the exclusive right to use this trade-mark, and I think is entitled to relief in this court, even if "the defendant Griffin is also the purchaser, assignee, and owner of any and all interest in said trade-mark remaining in said Jenkins, or reserved to him by the hereinbefore mentioned assignment by him to the Coal Oil Johnny Soap Company, of date on or about June 14, 1894, and also any other interest remaining in said Jenkins." The demurrer is overruled.