# LINCOLN PAINT & COLOR COMPANY *v.* AMERICAN PAINT WORKS.

TRADEMARKS; WORDS DESCRIPTIVE OF QUALITY.

While there may be circumstances under which the word "Climatic" may be used as a purely arbitrary trademark, it is descriptive of the quality of the goods on which it is used, and therefore not registerable as a trademark, where it appears that the applicant for its registration and the opposer have both applied it to mixed paints sold to the public and advertised by them as adapted to stated climatic conditions. (Citing *Re Central Consumers Co.* 32 App. D. C. 523.)

No. 975.   Patent Appeals.   Submitted May 12, 1915.   Decided May 28, 1915.

HEARING on an appeal from a decision of the Commissioner of Patents dismissing an opposition to the registration of a trademark.                                            *Reversed.*

The facts are stated in the opinion.

*Mr. Samuel W. Banning* and *Mr. Ephraim Banning* for the appellant.

*Mr. E. T. Fenwick, Mr. L. L. Morrill,* and *Mr. Hugo Mock* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Appellant, Lincoln Paint & Color Company, filed a notice of opposition in the Patent Office to the registration by appellee, the American Paint Works, of the word "Climatic" as a trademark for mixed paints.

It was stipulated that appellee had used the mark on mixed paints since 1906, and that the opposer had used the words "Lincoln Climatic Paint" as a trademark for mixed paints since 1910. The applicant being concededly the prior user, the only question before us is whether or not the mark is descriptive of the quality of the goods on which it is used. The tribunals of the Patent Office, holding that it was not descriptive, dismissed the opposition.

Numerous advertisements put out by the applicant and the opposer were exhibited illustrating the use of the word "Climatic" in connection with the production, use, and sale of mixed paints. The opposer had a special formula adapted for use under four different climatic conditions alleged to exist in the United States, and the label contained a map of the United States defining the territory in which a particular formula should be used to best withstand the peculiar climatic conditions. The applicant advertised its climatic mixed paint as specially adapted to a damp climate, the discovery of which it claimed to have made by persistent and expensive experi-

ment. In the light of this disclosure, and the common knowledge of the effect of climatic conditions upon paint, we think the mark is clearly descriptive, and not entitled to registration. It indicates the chief characteristic which lends value to the goods.

There are doubtless instances where the word "Climatic" might be used as a purely arbitrary trademark, but in determining the right of applicant to have it registered in the present case, the use becomes most important. In *Bennett* v. *McKinley,* 13 C. C. A. 25, 26 U. S. App. 496, 65 Fed. 505, where the court had under consideration the word "Instantaneous" as a trademark to be used on a certain kind of tapioca which could be instantly softened for cooking, the court said: "The word which would be fanciful or arbitrary when applied to one article may be descriptive when applied to another. If it is so apt, and legitimately significant of some quality of the article to which it is sought to be applied, that its exclusive concession to one person would tend to restrict others from properly describing their own similar articles, it cannot be the subject of a monopoly. * * * Applying the rule to the facts of the present case, we think the word 'Instantaneous,' as applied to the kind of tapioca dealt in by the parties, is descriptive, and consequently not a valid trademark. It not only is aptly and truthfully descriptive of one of the properties of the article to which it is sought to be applied, but it is especially appropriate to point out concisely and accurately the peculiar characteristic which distinguishes the particular tapioca from other varieties."

The present mark is not used on a commodity sold only to persons skilled in the use of paint, but on mixed paint which is sold to and used by the public generally. Not only would it convey the impression to the purchaser that the paint was specially adapted to withstand the rigors of the climate, but it is so represented by the advertisements describing the superior quality of the goods bearing the mark. As we said in the case of *Re Central Consumers Co.* 32 App. D. C. 523: "It was evidently the intention of Congress, in placing these restric-

tions in the trademark act, to prohibit anyone from acquiring a property right, protected by law in its exclusive use, in a name possessing any inherent signification that would, of itself, enhance the sale or value of the article or articles to which it may be applied. In other words, it was intended to limit the selection to mere arbitrary words or designs, the value of which should consist alone in their becoming fixed in the public mind through continued use on the goods of the owner. It was not intended that the mark should lend value to the goods, but that the quality of the goods and the reputation of the owner should ultimately make the mark valuable as a symbol in the connection in which it may be used."

The decision of the Commissioner of Patents is reversed, and the clerk is directed to certify these proceedings as by law required.                                                  *Reversed.*