## SUPERIOR COURT

Richard H. Ryder et al.  
vs.   } Eq. No. 7182.  
Ormond J. Provost  
RESCRIPT.

February 27, 1925

BAKER, J. Heard on prayer for preliminary injunction.

The complainants are claiming the exclusive right to certain trade marks or trade names used in connection with the preparation and sale of certain extracts and toilet articles. No question as to the right to use any formula is involved.

As far as the use of the names, "Pine Odor Disinfectant" and "Clean-it" are concerned, the Court is of the opinion that the complainants are not entitled to any relief. These names are too general and too comprehensive, being ordinary descriptive words of quality or characteristics, to be the subject of any exclusive right.

Hopkins on Trade Marks, &c., 4th ed. Secs. 46 & 47.

R. C. L., Vol. 26, Trade Marks, &c., Secs. 24 to 27.

In regard to the names "Bronson's Magic Ointment" or "Bronson's Magic Family Ointment," in the judgment of the Court the testimony as to their use is not so clear and convincing as to warrant the granting of the relief asked for in the bill.

The chief question involves the use of the words "Zenobia," "Ozonec" and "Norris Flavoring Extract." The evidence shows without dispute that prior to 1920 the complainant Ryder was undoubtedly entitled to the exclusive rights connected with these marks or names. The first two he originated himself and the latter he acquired by purchase. Early in 1920 Mr. Ryder, who had been doing business for some years under the name of the Bronson Chemical Company, attempted to sell his business, apparently including all rights of every kind connected with the business, to a man named Holmes. Pending the completion of the negotiations Mr. Ryder continued to make goods under the above names and these goods were sold by Mr. Holmes, who conducted the business under the name of "The Qualite Service Company." The contemplated sale to Mr. Holmes, however, did not materialize, and about July or August 1921 the latter made an assignment for the benefit of his creditors. The testimony shows clearly, in the opinion of the Court, that at the assignee's sale nothing was sold except the stock and fixtures at the place of business, although apparently a large number of labels bearing the above names were also sold. The purchasers at the assignee's sale were Messrs. Skelton and Lasell. The complainant Ryder was employed by them and was paid weekly wages. Skelton and Lasell used the labels containing the above

names and marketed the goods under those names without protest from Mr. Ryder. They continued in business until about August 1923, when the respondent purchased their interest.

In the judgment of the Court the bill of sale which the respondent received shows clearly that he purchased only the fixtures, goods and stock in trade, such as Skelton and Lasell may have owned, although he claims he purchased the right to the trade marks. He did, however, also buy a large number of labels bearing the above names. The testimony would seem to show that the complainant Ryder entered into an agreement whereby he was to be employed by the respondent at a weekly wage. After a short time the respondent laid Mr. Ryder off and he was only employed occasionally thereafter.

It would appear to the Court from the evidence that neither Holmes nor Skelton and Lasell, nor the respondent, obtained by purchase, assignment or otherwise any exclusive right to the marks or names in question. In the opinion of the Court, however, on the testimony a very serious question is raised as to whether or not complainant Ryder by his dealings with these men and his continued permission to them for a period of about four years to use the above names and labels has not placed himself in a position where he can not now insist that he himself has the exclusive right to these names.

The evidence then shows that early in 1924 the complainant Ryder and the complainant Gobeille made arrangements to do business. An establishment was opened on Fenner street about April or May 1924 in the name of the complainant Gobeille and the trade names in question were registered with the Secretary of State by Mr. Ryder, and in June 1924 he purported to assign the names in question to the complainant Gobeille. The Court has serious doubt whether this assignment is of much effect. The law seems well settled that a trade mark or trade name is not a right in gross or at large. Such a right must be appurtenant to an established business or trade in connection with which the mark is employed. The transfer of a naked trade mark or trade name apart from a business and its good-will is apparently of no effect.

R. C. L., Vol. 26, Trade Marks, Sec. 73.

Hopkins on Trade Marks, 4th ed. Sec. 17.

Falk vs. American West Indies Co., 1 L. R. A., (New Series), 704 and note.

Bulte vs. Igleheart Bros., 137 Fed. 492.

Dietz vs. Horton Mfg. Co., 170 Fed. 865.

Chadwick vs. Covell, 151 Mass. 190.

In the opinion of the Court the testimony shows that at the time the complainant Ryder made the alleged assignment or agreement of June 30, 1924, with the complainant Gobeille, he had at that time no business or good-will and at the most nothing but a naked right to the trade names in dispute. The testimony shows that at the present time he is merely an employee of the complainant Gobeille.

Moreover, the evidence discloses the fact that the complainant Gobeille has recently sold or disposed of his business in some way to one of his sons. While it is true that he holds notes and has not turned over to his son whatever rights he may have under the agreement or assignment of June 30, 1924, from Mr. Ryder, nevertheless he apparently has parted with his interest in the business on Fenner street because of ill health. This being so there is very serious doubt whether he is in a position to maintain the bill.

On the law and the facts in this case the Court is of the opinion that the complainants are not entitled to the relief prayed for.

The prayer for a preliminary injunction is denied.

For Complainants: Frank L. Hanley.

For respondent: Fitzgerald & Higgins.