E. Y. BROWN et al., Appellants,

v.

A. W. FOWLER, Appellee.

No. 15896.

Court of Civil Appeals of Texas.

Fort Worth.

July 11, 1958.

Rehearing Denied Sept. 19, 1958.

**112**

---

Jerome H. Parker, Jr., McDonald, Sanders, Nichols, Wynn & Ginsburg, and Atwood McDonald, Fort Worth, for appellants.

Biddle, Hight & Thompson, and Eugene D. Biddle, Fort Worth, for appellee.

BOYD, Justice.

Appellee A. W. Fowler secured a judgment against appellants E. Y. Brown and the Jill Gym Company, Inc., for $648.83, for royalties and for perpetual injunction restraining appellants from manufacturing or selling a pedal actuated merry-go-round device which appellee alleged he conceived and invented, and from making use of appellee's plans, models and data concerning said device.

According to appellee's allegations, he disclosed his process to appellant Brown, in confidence, during negotiations for a license agreement; he and Brown entered into a license agreement whereby Brown was to manufacture and sell the device, and was to pay appellee a royalty of 5% of the manufacturer's wholesale selling price; Brown paid royalties on some of the devices which he manufactured and sold, but finally refused to pay appellee anything, although he continued to manufacture and sell the machines.

Appellants alleged that Brown and appellee developed the merry-go-round jointly; that the device is not unique or secret and contains no secret mechanism, process or design, and can be duplicated by any reasonably experienced mechanic who might see one for the first time. There were pleas of no consideration and failure of consideration for the license agreement, and allegations that the agreement never became enforceable because a patent application for the device was rejected.

The agreement entered into by appellee and Brown is as follows:

"Know all men by These Presents: that this Agreement is entered into by and between A. W. Fowler, Licensor, and E. Y. Brown, Licensee, both of Fort Worth, Tarrant County, Texas.

"Witnesseth:

"That Whereas Licensor and Licensee have invented certain new improvements in a Pedal Operated Merry-Go-Round for children, and have had prepared and filed an application for letters patent in the United States Patent Office, and

"Whereas, Licensee is desirous of acquiring an exclusive license to manufacture, sell and otherwise exploit the said Merry-Go-Round, in recognition of Licensor's rights in said invention and patent application.

"Now, Therefore, for and in consideration of the sum of Ten ($10.00) Dollars, and other good and valuable considerations, each paid to the other, and acknowledged by each, the parties agree as follows:

"I.

"Licensee agrees to make said Merry-Go-Round in suitable quantities to supply the trade requirements, and to sell and distribute the same throughout the United States, and elsewhere, according to his ability to do so, and agrees to put forth his best efforts in behalf of the device.

"II.

"Licensor agrees to develop said invention and improve the same wherever possible and shall disclose such improvements to Licensee as they are conceived and developed by Licensor, and such improvements shall belong to both parties hereto; either in joint application for patent, or by this license, and the parties hereto shall mutually agree as to whether or not such improvements will merit manufacture and sale by Licensee, and Licensee agrees that any improvements in said device he may conceive and develop shall be included under the license herein granted and agrees to pay to Licensor the same royalties thereon as herein provided for.

"III.

"Licensee agrees to pay to Licensor a royalty on all sales of said Merry-Go-Round a sum equal to five (5%) per cent of the manufacture wholesale selling price thereof, and said royalties are to be paid quarterly, or every three months, and not later than thirty (30) days after the expiration of each quarter period for which said royalties are payable, and Licensee agrees to furnish to Licensor, with such royalty payments, a detailed report of the sales covered by said period.

"IV.

"Licensor and Licensee agree that all necessary expenses arising from any litigation involving the infringement of the patents or 'patent applications, or the devices covered thereby, belonging to Licensor, or in any suits or threatened suits against Licensor or Licensee, shall be borne equally by the parties hereto, share and share alike.

"V.

"This agreement shall be for the life of any patent or patents, which may be granted to Licensor and Licensee jointly or to either separately, or such license shall continue in force until mutually terminated, or unless breached by either party hereto."

The application for a mechanical patent on the device was rejected; but appellee secured a design patent after the events arose which appellee claims amounted to a repudiation of the license agreement by Brown.

In answer to the following numbered Special Issues, the jury found that: (No. 1) the merry-go-round in question was conceived by appellee; (No. 2) appellee disclosed the design of the mechanism to Brown; (No. 3) the disclosure was made in confidence; (No. 4) appellants used the design to appellee's damage; (No. 7) appellee and Brown did not believe, at the time they entered into the license agreement, that their joint application for a mechanical patent on the merry-go-round would be granted.

Appellants' first point of error is that the injunction was improper because the secret was published in appellee's design patent and the device is no longer a secret. Appellants' original brief was filed before the determination of Hyde Corporation v. Huffines, 314 S.W.2d 763, and K. & G. Oil Tool & Service Co. v. G. & G. Fishing

Tool Service, 314 S.W.2d 782, both by the Supreme Court of Texas. On the authority of the cited cases, this point is overruled.

■ Appellants' second point is that the jury's answers to Issues Nos. 3 and 7 were without support in and were contrary to all of the evidence. The third point is that it was error to refuse to submit a definition of "in confidence" in connection with Issue No. 3.

Brown testified that nothing was said about keeping the matter confidential and all appellee said about it was "Well, certainly, I meant for him to keep it confidential unless we could make a deal."

If the disclosure was made because Brown represented to appellee that he was interested in a contract to manufacture and sell the device, there need be no express stipulation that the disclosure was made "in confidence." Hyde Corporation v. Huffines, Tex.Civ.App., 303 S.W.2d 865, and authorities there cited. We, therefore, think that appellants' contentions that the answer of the jury that the disclosure was made in confidence was without support in the evidence and that the words "in confidence" should have been defined, are without merit.

The answer to Issue No. 7 that appellee and Brown did not expect the mechanism to be patented is, in our view, immaterial and the point that the court erred in rendering judgment for appellee because such answer was without support in the evidence, is overruled.

Point 4 is that the court erred in failing to submit a special issue inquiring whether the device was a trade secret, and the last point is that it was error to render judgment against appellants in the absence of a jury finding that the device constituted a trade secret.

■ We are unable to find a comprehensive definition of a trade secret. It "may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Restatement of the Law, Torts, sec. 757, Comment b; Harris Manufacturing Company v. Williams, D.C., 157 F.Supp. 779.

In Germo Mfg. Co. v. Combs, 209 Mo. App. 651, 240 S.W. 872, 881, it is said: "In other words, must the formula be shown to be in truth and in fact a trade secret, in the strict sense of that term, before any relief can be granted? We think not, for even if the formula is not a strict trade secret, in the sense of being a new discovery no one had ever used before, still it was not generally known to and used by the world, * * *."

■■ Appellee's suit is based upon an alleged breach of contract and wrongful disregard of confidential relationships. Processes which are not patentable may be trade secrets. To be patentable, the process must be an invention, resulting from genius or imagination beyond the reach of mere artisanship. A trade secret may be a discovery rather than an invention, and may result from industry or application, or may be merely fortuitous. It may be any secret of a party important to his interest. The means by which the discovery is made may be obvious, and the experimentation leading from known factors to presently unknown results may be simple and lying in the public domain. But these facts do not destroy the value of the discovery and will not advantage a competitor who by unfair means obtains the knowledge without paying the price expended by the discoverer. The secret may have been anticipated by prior art and may be merely a mechanical improvement which any good mechanic can make. The fact that it may be discovered by fair means does not deprive the owner of his right to protection from one who secures the knowledge by unfair means. The question is not, "How could he have secured the knowledge?" but, "How did he?" K. & G. Oil Tool & Service Co. v. G. & G. Fishing Tool Service, supra;

A. O. Smith Corp. v. Petroleum Iron Works Co., 6 Cir., 73 F.2d 531; Smith v. Dravo Corp., 7 Cir., 203 F.2d 369; E. I. Du Pont de Nemours Powder Co. v. Masland, 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016; Tabor v. Hoffman, 118 N.Y. 30, 23 N.E. 12; Chadwick v. Covell, 151 Mass. 190, 23 N.E. 1068, 6 L.R.A. 839; 2 Story's Eq.Jur., 14th ed., sec. 1283, p. 630.

■■ The rule to be deduced from the authorities seems to be that one who has a secret formula or process has a property right therein, which, though it may be lost should one rightfully acquire knowledge of it, will be protected as against those who, through breach of trust or violated confidence, attempt to apply the secret to their own use.

In E. I. Du Pont de Nemours Powder Co. v. Masland, 244 U.S. 100, 37 S.Ct. 575, 576, 61 L.Ed. 1016, the court said:

"The word 'property' as applied to trademarks and trade secrets is an unanalyzed expression of certain secondary consequences of the primary fact that the law makes some rudimentary requirements of good faith. Whether the plaintiffs have any valuable secret or not the defendant knows the facts, whatever they are, through a special confidence that he accepted. The property may be denied, but the confidence cannot be. Therefore the starting point for the present matter is not property or due process of law, but that the defendant stood in confidential relations with the plaintiffs, or one of them. These have given place to hostility, and the first thing to be made sure of is that the defendant shall not fraudulently abuse the trust reposed in him. It is the usual incident of confidential relations. If there is any disadvantage in the fact that he knew the plaintiffs' secrets, he must take the burden with the good."

■ Under the prevailing rule and especially the holdings in Hyde Corporation v. Huffines, supra, and K. & G. Oil Tool & Service Co. v. G. & G. Fishing Tool Serv-ice, supra, we think appellee had a property right in his process and that the appellants were properly enjoined from manufacturing or selling it. We, therefore, overrule all of appellants' points of error and affirm the judgment.